### RAY *v.* THE STATE.

BECK, J. 1. From the evidence submitted upon the hearing of the motion for a continuance it does not appear that the court abused its discretion in overruling the motion.

2. Where a witness who examined the wound that caused the death of the person alleged to have been murdered stated that the deceased had "a pistol-shot between the fifth and sixth ribs," and this was objected to as an opinion of a witness who had not qualified as an expert, the admission of the testimony will not be held ground for a new trial, where it appears that in the further examination of the witness he distinctly stated that he did not know whether the shot was made by a pistol or some other kind of firearm, and that he could not state that it was a pistol-shot.

3. While it was material to inquire whether the shot which took the life of the deceased came from a pistol or some other kind of firearm, the court did not err in permitting certain witnesses to testify, without qualifying as experts, that, having heard the sound of a firearm at about the time and place at which the deceased was killed, the report of the weapon "sounded like a pistol," or that "it was a pistol-shot," and to make other similar statements as to the origin of the report. While such testimony may fall under the head of opinion evidence, the statement represents such a simple and rudimentary inference as practically to be a statement of fact; and if the party contesting the competency of such evidence desires so to do, he can cross-examine the witness, and, by showing that the witness has had no experience in the matter of the sound of reports coming from the discharge of pistols or other firearms, show that the opinion of the particular witness that the sound in question was made by a pistol is without value and should have no weight. 17 Cyc. 184, 185; McKelvey on Evidence, 219, n. 5; *McGinnis* v. *State*, 31 *Ga.* 236, 262; 5 Enc. Ev. 706 et seq.; 2 Jones' Com. Ev. § 360.

4. There being evidence from which the jury would have been authorized to find that the deceased had a living husband from whom she had not been divorced but with whom she was not living, and other evidence tending to show that the accused continually sought the society of the deceased and was urging her to marry him, when a marriage between them under the circumstances could only mean the establishment of an illicit sexual relation, and that the woman was unwilling or reluctant to consent to the establishment of the relation persistently urged by the accused; and there being also evidence from which the jury might find that there existed certain causes of jealousy on the part of the accused, the court did not err in permitting a witness to testify: "During the fall of 1913 . . Dave [the defendant] didn't say that he would kill Rena [the deceased], but he said that if she didn't do him any good she wouldn't do nobody else any good; that was after she declined to marry him." While this threat was made over a year before the homicide, there was evidence that the defendant on another occasion said, "That is the only woman that I ever saw that I loved in my life," and that "she is the only woman that I ever saw that I would kill a man [about], or kill her if she should marry another man." On the day of the homicide, and only a very short time before, according to the testimony of another witness, the defendant was heard to curse and say, "God damn," while talking to the deceased; and still another witness testified that on the morning of the homicide "while they [the accused and the deceased] were quarreling he was begging her to go to church with him." What weight, as showing the state of feelings upon the part of the accused towards the deceased, these incidents just related should have was a question for the jury; and while certain of them are of but trifling significance, and others remote in point of time from the date of the homicide, taken together and considered in the light of the relation of the man and woman, it can not be said that they were altogether immaterial and irrelevant, and the court properly permitted them to be shown before the jury for their consideration.

5. There was no merit in the other grounds of the motion for a new trial, and the evidence was sufficient to authorize the verdict.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*
NOVEMBER 13, 1914.

Indictment for murder. Before Judge George. Crisp superior court. June 26, 1914.

It was charged in the indictment that on a day stated Dave Ray unlawfully and with malice aforethought killed Rena Felton by shooting her with a pistol. Upon the trial the defendant was convicted. He made a motion for a new trial, which was overruled, and he excepted.

*O. T. Gower,* for plaintiff in error. *Warren Grice, attorney-general,* and *J. B. Wall, solicitor-general,* contra.