## 30568. MILLS *v.* THE STATE.

DECIDED JUNE 30, 1944.

*C. G. Battle,* for plaintiff in error.

*Lindley W. Camp, solicitor, John A. Boykin, solicitor-general, Durwood T. Pye,* contra.

GARDNER, J. ■ Many of the assignments of error in this case have been held by this court on numerous occasions to be without merit. As to the general grounds, and special grounds a, b, c, d, and e, the evidence is amply sufficient, without the confession, to support the verdict. However, there is no reason to doubt that the defendant made the confession. The paraphernalia having been found in the home of the defendant, the presumption is that she owned the paraphernalia. *Stovall* v. *State,* 68 *Ga. App.* 27 (2) (21 S. E. 2d, 914). This evidence taken in connection with evidence as to the method of operating the lottery, and that the num-

ber-game lottery was in operation in Fulton County at that time (the question of the competency of evidence tending to show that the lottery was being carried on in Fulton County at that time will hereinafter be dealt with more fully), was sufficient to authorize the jury to find the defendant guilty under the accusation. *Williams* v. *State,* 71 *Ga. App.* 155 (30 S. E. 2d, 356); *Dickerson* v. *State,* 68 *Ga. App.* 157 (22 S. E. 2d, 207) For many other decisions to the effect that this evidence is sufficient to sustain a conviction, see Ga. Code Ann., § 26-6502, catchwords "Number game."

■ Special grounds f and g complain because the witness Densmore' was permitted to testify, over objection of the defendant, that as an officer and from his experience in prosecuting some four or five hundred cases of the number-game lottery per year during his eight years of service, and from conversations with operators of the game, and from his special employment by the City of Atlanta as detective and police officer in this particular field, he knew that the number game was in operation in Fulton County during the period covered by the activities of the accused. It is earnestly argued that this testimony was incompetent, illegal, and prejudicial to the accused, on the ground that the witness, not being an expert, and there being no question of science, skill, trade, or like questions, could not give his opinion and conclusion as to whether the number game was being operated in Fulton County, and could not testify that he was familiar with the methods of operation of the number game. Since this same contention is constantly made in this class of cases, we have gone to considerable research in an effort to clarify the question, if there should still remain any doubt concerning it. It must be kept in mind that section 38-1710 of the Code deals with expert testimony concerning science, skill, trade, or like questions. In such matters experts may give their opinion based' on facts as proved by other witnesses. But section 38-1708 deals with opinions of lay witnesses. The latter section reads: "Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor; but if the issue shall be as to the existence of a fact, the opinions of witnesses, generally, shall be inadmissible." The very nature of the lottery involves, in every transaction, at least two people, 'and, according to the evidence which comes before this court, usually involves hundreds

of people. In the instant case, as well as in the great number of cases which have been appealed to this court, the enterprise thrives to such an extent that the peace authorities deem it necessary to assign special officers to the task of suppressing it. Not only as to this enterprise is such evidence as is here objected to admissible, but from an early time the Supreme Court has held in numerous cases that by virtue of the authority conferred under the Code, § 38-1708, any witness may swear to his opinion or belief when the question to be decided by the jury is one of opinion, provided the witness gives his reasons for his opinion. In such cases the conclusion of the witness is allowed to go to the jury, and the jury are to decide what credit will be given such opinions of the witness in determining the fact of the guilt or the innocence of the accused. Judge Lumpkin, speaking for the court in *Franklin* v. *Macon,* 12 *Ga.* 257, 261, said: "The impressions of Mr. Rowland were made from the consultations of the Council Chamber, and we think were sufficiently certain and positive as to be admissible. I have long been satisfied that we are too hide-bound and restricted in our practice, with regard to the admissibility of evidence. The books of *reports* will show that there is no State in the Union, and no country in the world, where there are as many captious objections made to testimony. It is high time that the practice should be discouraged." Then again Judge Nisbet in *Riggins* v. *Brown,* 12 *Ga.* 271 (2), stated: "Opinions of a witness are competent, when the facts on which they are founded are stated." See also *Ray* v. *State,* 142 *Ga.* 655 (3) (83 S. E. 518), wherein the court said: "While such testimony may fall under the head of opinion evidence, the statement represents such a simple and rudimentary inference as practically to be a statement of fact; and if the party contesting the competency of such evidence desires so to do, he can cross-examine the witness, and, by showing that the witness has had no experience in the matter of the sound of reports. coming from the discharge of pistols or other firearms, show that the opinion of the particular witness that the sound in question was made by a pistol is without value and should have no weight. 17 Cyc. 184, 185; McKelvey on Evidence, 219, n. 5; *McGinnis* v. *State,* 31 *Ga.* 236, 262; 5 Enc. Ev. 706 et seq.; 2 Jones' Com. Ev. § 360." To the same effect see *O'Berry* v. *State,* 153 *Ga.* 880 (113 S. E. 203); *Tanner* v. *State,* 163 *Ga.* 121 (7) (135 S. E. 917). Many authori-

ties are cited in division 7 of the opinion in the last-mentioned case, and anyone interested may receive much information concerning this question by reading them. In stating that a witness may give an opinion derived from his personal knowledge and *from hearsay,* the Supreme Court in *Manley* v. *State,* 166 *Ga.* 563 (7) (144 S. E. 170), uses the following language: "Where a witness knows a fact both from his personal knowledge and from hearsay, and the issue is one upon which the witness can express an opinion after giving the facts, it is competent for such witness to testify that he knows the facts upon which he bases his opinion both from his personal knowledge and from hearsay. (a) The insolvency of a bank can be established by the opinion of a witness, provided he gives the facts upon which his opinion is founded; and such testimony being competent, the jury must decide as to its weight and effect, and the credit they will give to it. (b) Where a witness and others make an appraisal of the assets of an insolvent bank, such witness can testify as to the value put upon various bills receivable of the bank by such appraisers, as one of the facts upon which he bases his sworn opinion at the trial that the bank is insolvent; and such evidence is not hearsay." See also *Cobb* v. *State,* 185 *Ga.* 462 (195 S. E. 758); *McIntyre* v. *State,* 190 *Ga.* 872 (6) (11 S. E. 2d, 5, 134 A. L. R. 813); *Humphreys* v. *State,* 35 *Ga. App.* 386 (133 S. E. 518); *Ellison* v. *State,* 40 *Ga. App.* 225 (149 S. E. 178). In *Lunsford* v. *State,* 60 *Ga. App.* 537 (4 S. E. 2d, 112), this exact question was passed upon by this court, although the opinion does not reveal any reference to it. We have reviewed the original record of file in this case, and find that over objection the witness was allowed to testify that the "number game" was in operation in Fulton County at the time Lunsford was arrested, and error was assigned on the admission of this testimony. · This court, in division 10 of the opinion, in dealing with that question, said: "Many other assignments of error as to the admission of testimony are made, which we have not specially dealt with. We have examined these various assignments, and find that for various reasons they do not show reversible error. None of them present any novel question, and we do not deem it necessary to deal with them at length. The evidence amply authorized the verdict; and no error of law appearing, the judge did not err in overruling the certiorari." See *Mack* v. *State,* 65 *Ga. App.* 812 (16 S. E. 2d,

519); *Johnson* v. *State, 69 Ga. App.* 835 (26 S. E. 2d, 844); and also 23 C. J. S., page 100, § 880, which deals with opinions of non-expert witnesses, based on facts within their knowledge, and page 108, § 885, as to opinions of expert witnesses. There are numbers of other decisions of this court which have passed this question over without going into the reasoning and authorities for the opinions. We will not cite or quote them, in view of the number of decisions which we have cited above, but we are firm in the conviction that the assignments of error to the effect that the court erred in permitting the witness to testify that in his opinion, derived from his personal knowledge and from having others who operated the number game explain it to him, are without merit, and that the court did not err in permitting the witness to testify that he was familiar with the operations of the number game and the methods and paraphernalia used in its operation, and that it was being operated in Fulton County at that time. The assignments of error in these special grounds are without merit.

■ Special grounds h and i complain of the admission of the testimony of the witness Densmore concerning the meaning and import of the State's exhibits 1, 2, and 3. Exhibit 1 consists of a sheet of paper with "111" in the right-hand top corner. In a column to the left on each similar sheet are figures consisting of three digits. Opposite each of these figures in the right-hand column are certain other figures of two digits. The two-digit columns are each added under the words "total sales." In the left-hand column, at the bottom of the three-digit figures, there is marked "book number," and under that a number of five digits. To the right of this bottom number are the words "sales number," and under "sales number" is a figure of two digits. When the witness Densmore was on the stand this exhibit number 1 was handed to him by the State's attorney, and the witness was requested "to state to the jury what that indicates, if it indicates any connection with the lottery." The witness answered: "State's exhibit 1 which you hand me indicates a connection with the lottery. It indicates there is a writer 111, and these tissues came from an original lottery book, and these are white players' tickets that came from the same original lottery book the tissues came from, and that is writer 111 who has sales on five tickets which these represent, which they keep as their memorandums to check by in the

360

evening after their ribbon comes back from the office where they check up the hits. These white tickets are players' tickets which never did go to the buyer." State's exhibit number 2 consists of a sheet of paper with letters and figures on it. The exhibit was handed to the witness by the State's attorney with this request: "I hand you State's exhibit 2 and will ask you to state to the jury what that indicates, if it indicates any connection with the lottery?" The witness answered: "This piece of paper indicates two books, book R-20 and book CR-20. It also indicates that some players played certain amounts with writer 111 on it, and owe that to writer 111." State's exhibit number 3 is a notebook indicating that the numbers containing three digits thereon purported to have been prepared by experts, and to be "the week's horoscope numbers," and other selections designated such as: "Tripp's selections;" "Leony's week's best combine;" "Arguin' Andy insists on;" "Black Jack's past due comparisons;" "Jess Greene's choice;" "Number Nealy's best for this week;" and others. Under each of these headings were various numbers consisting of three digits each. The State's attorney handed exhibit 3 to witness Densmore with the request: "I hand you State's exhibit 3, and will ask you to state what that exhibit contains?" The witness answered: "This is a number guide which all writers keep around for players to use when they come in to attempt to pick out the lucky number for the day. Lottery tickets are not always written in lottery books such as I described in exhibit A. Most of the time where they have original lottery books you will find them using them, but a lot of times they use white paper, and players keep a duplicate copy of the numbers they play. They write it all on this white paper, and it is in the same form except it doesn't have a serial number on it, and is just white paper. Lottery tickets are not always dated; you find them about half dated and half undated. These are original lottery tickets in State's exhibit 1, and the white ones are players' tickets from original lottery books, and the tissues are writers' copies to check with in the afternoon when the ribbon comes back. As to what the 890 means on this ticket, and what sum of money was played on it, and whether the player won or lost on it—I don't know what the number was that day, but the player attempted to guess it, playing 890 for eleven cents, and if it had appeared he would have received $55, less ten per cent. going to the writer as his commission on the hit, the player actually receiving $47.50—no, $49.50

on eleven cents straight. If the number had not appeared that day the player would have received nothing, and would not have gotten his money back. That applies to all these entries except 062 in the box, which has six ways to fall, and by playing it in the box for eleven cents it gives it six ways to fall, and would win the same as for one cent straight. If that number fell any of those ways the player would win $10, less ten per cent. going to the writer as his commission on the hit, or $9. That applies to all those numbers. If the number had not appeared the player would lose 2 cents." The objection to this evidence, and the contentions argued as to its inadmissibility, are as follows: "The ruling of the court was error prejudicial to the defendant in the trial of her case. It allowed the witness to give his opinion as to what the testimony and alleged papers and figures were, and as to what they indicated to him. This was clearly the opinion of the witness, and was a direct violation of the rule which prohibits witnesses from giving their opinions and conclusions as to the existence of facts. The papers and figures were plain and intelligible; therefore, for the witness to state what they indicated to him, and that indication was that they were papers and numbers used in the alleged lottery enterprise was hurtful to the defendant in the trial of her case. This ruling allowed the witness to invade the province of the jury and decide for the jury what the figures and papers indicated as a matter of fact—that the jury would not have to determine for themselves what they indicated; but that the witness could give them his opinion as competent testimony as to what the legal construction of the tickets or numbers and papers were as a matter of evidence. . . The evidence was clearly the opinion of the witness—it was his conclusion, and had reference to written matter then presented to him as to what the meaning thereof was—his opinion as to what it was, and his construction of the paper as a matter of evidence offered against the defendant. This ruling almost destroyed the right of this defendant to a fair and impartial trial; and denies her the right to have her guilt or innocence determined by competent, relevant, and legitimate testimony, and not the opinion of the witness. This ruling almost destroyed the decorum of a jury trial." Since the witness had previously testified that he was familiar with the manner and method by which the number game was operated, for the reasons set forth, and the

authorities cited in division 2 of this opinion, it was legitimate for the court to admit the opinions and conclusions of this witness as to the meaning and effect of these documents as they related to the operation of the number racket and gambling device. Moreover, it is elementary that any written document which is ambiguous may be explained to the jury by parol evidence. As to the credit that the jury will give opinions and conclusions based upon facts within the knowledge of a witness, and as to the credit which they will give to parol testimony as to the meaning and purport of an ambiguous written document, is likewise a matter of credit to be determined by the jury. For these reasons the court did not err in admitting the testimony concerning any of these documents for any of the reasons assigned. We have gone into detail in giving the court's view as to the contentions here argued, for the reason that these questions recur quite often on appeals here in this class of cases as though the court had overlooked or not considered them. The contentions in these special grounds are without merit.

■ Special ground j assigns error because the court admitted, over objection, the records of two former convictions of the defendant of violations of the lottery laws, one in 1937, and one in 1938. At the time the documents were admitted it was stated by the State's attorney that they were being offered for the purpose of illustrating motive and intent, and to show the bent of the defendant's mind. Three objections were urged to the introduction of these documents: (a) that it put the defendant's character in issue; (b) that it was not shown that Josie Mills in those indictments was the same Josie Mills then being tried; (c) that the convictions were too remote to shed any light upon "the bent of mind of the defendant at the trial." As to objection (a), this court has held on numerous occasions that this objection is without merit. *Fitzgerald* v. *State*, 51 *Ga. App.* 636 (181 S. E. 186); *Weeks* v. *State*, 66 *Ga. App.* 553 (18 S. E. 2d, 503); *Thrasher* v. *State*, 68 *Ga. App.* 820 (24 S. E. 2d, 222). As to objection (b), this court has decided this point adversely to the defendant in *Williams* v. *State*, 62 *Ga. App.* 679 (3) (9 S. E. 2d, 697), and others. As to objection (c), we can not hold as a matter of law that the previous conduct of the defendant was too remote to shed any light upon the transaction then being tried. This is a question to be considered by the jury as to the credit to be given such testi-

mony. Since the defendant denied any connection with the transaction, we hold that under the facts of this case the court did not commit reversible error in admitting this testimony as a circumstance to be considered by the jury along with all the other facts and circumstances in the case.

■ Special ground k assigns error because the court allowed the solicitor-general upon cross-examination to inquire of the defendant's witness whether she had been convicted and sentenced for violating the lottery law. While it is true that generally a witness may not be impeached by proof of specific acts, but the credibility of a witness on cross-examination may be tested by questions concerning conduct in pertinent, specific acts for the purpose of having such testimony go to the jury to determine the credibility of the witness.

■ Special ground l complains because the court charged the jury, in effect, that all who participate directly or indirectly, or procure, counsel, aid or assist another in the commission of a misdemeanor, are principals. Error is assigned on this charge, (a) because it was unauthorized by the evidence, and (b) because it was an implied intimation that the defendant was aiding and assisting another in the illegal operation of a lottery. This is a correct principle of law, and the evidence authorized it. This ground has no merit.

■ Special ground m assigns error because the State failed to show the jurisdictional venue—that it does not appear that there was any crime or offense committed in Fulton County. The evidence is plain that the documents were seized at the defendant's home on the date she was arrested. The jury were authorized to find that the exhibited documents were current, even though no dates were shown, and that they were being used in the number game which the evidence shows was at that time in full-swing operation in Fulton County. This ground is without merit.

The court did not err in overruling and dismissing the certiorari for any of the reasons assigned.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*