31375. HARRIS *v.* THE STATE.

DECIDED OCTOBER 21, 1946. REHEARING DENIED DECEMBER 11, 1946.

*Williams & Smith,* for plaintiff in error.
*W. H. Lanier, Solicitor-General,* contra.

GARDNER, J. 1. J. L. Harris was indicted jointly with Hamp Freeman and LeRoy Gross, for murder. The defendant Harris was put on trial separately and a verdict returned for voluntary manslaughter. An amended motion for a new trial was overruled, and on this judgment Harris assigns error.

Succinctly, the evidence reveals that the three defendants and others were working for the same employer. They rode to and from their work in a truck driven by the defendant Harris. On the day of the homicide they left the scene of their employment in the truck about 5 o'clock p.m. It was payday. Before Harris had performed his duty of discharging the employees at their intended destination, the deceased became intoxicated as they stopped along the way. He was fussing and very obnoxious, demanded of the defendant Harris that he be carried to a certain place off the usual itinerary, and

engaged in a difficulty, not only with Harris, but with at least one other person. In one of these fracases the deceased was cut about the head by someone. The evidence does not clearly reveal by whom he was cut. The defendant Harris drove the truck on in the discharge of his duty of disposing of the other employees. The deceased left the truck and made his way to the house of a woman with whom he had promised to share his earnings, and whom he was to have met at a store. The woman left the store and returned to her home. When she arrived at her home, the deceased was on the outside of the house. He was bleeding about his head considerably from cuts about his forehead. They both went into the house where they were treating his wounds with cobwebs and remnants of cloth. The defendants passed by the said store, and one of the codefendants, not Harris, went to the store and made inquiry as to whether or not the deceased was there. The three codefendants then proceeded in the truck to a house near where the deceased and the woman were. The other two codefendants went to the house and inquired concerning the deceased. Upon ascertaining that he was in the house, one of the codefendants hallooed three times. Soon thereafter the defendant Harris appeared at the woman's house and shot the deceased with a gun which he usually carried in the truck.

The State's evidence revealed that the defendant Harris was standing at the edge of the porch and shot the deceased while the deceased was walking from the fireplace toward the bed. The deceased fell to the floor and was afterwards found on the bed. As to whether he got up himself onto the bed or was put on the bed is not clear from the evidence. He was shot about the neck and head, and died while being carried from the bed to the ambulance, or soon after being placed in the ambulance. He was never able to speak to anyone after being shot.

The contention of the defendant Harris is that he went to the house not knowing that the deceased was there, and upon Harris's arrival the deceased was advancing on him with an axe and stating with an oath that he, the deceased, intended to kill Harris, whereupon Harris shot him in self-defense.

The general grounds are not specifically argued as such, but in the special grounds it is contended that the evidence for the State failed to show beyond a reasonable doubt that the death of the de-

ceased resulted from the gun-shot wound inflicted by the defendant Harris. We will discuss this later. Otherwise, no error is argued as to the general grounds.

2. Special ground 1 is based on the contention that the evidence is insufficient to show that the gun-shot wound caused the death of the deceased; that the evidence is equally as strong that he died from the cut wounds on his head. The jury are authorized, in the consideration of a criminal case, to believe a part of the defendant's statement and a part of the evidence. It does not seem that the defendant Harris, under his statement, can very plausibly contend that the deceased died from the cut wounds on his head rather than the gun-shot wounds, for Harris states that, as he approached the house with his gun, the deceased seized an axe, began cursing Harris, and that Harris was forced to shoot him in self-defense. The evidence further reveals that after the deceased was shot he was never able to speak to anyone and died a few hours afterwards. This ground is without merit.

3. Special ground 2 assigns error because a non-expert witness was permitted to testify, over the objection of the defendant Harris, "From the nature of the wound [meaning the gun-shot wound] as I saw it, and its location and the depth of it, that wound, I would say, was sufficient to produce death." This evidence was admissible under the Code, § 38-1708. See also *Dickerson* v. *State*, 68 *Ga. App.* 157 (3) (22 S. E. 2d, 207); *Mills* v. *State*, 71 *Ga. App.* 353 (2) (30 S. E. 2d, 824).

4. Special grounds 3 and 4 assign error on the admission of testimony, over objection. Roy Brown, a witness for the State, who operated the store where the deceased was to meet the woman, Ida Green, testified that on the night of the homicide Hamp Freeman, a joint defendant, left the truck and came to the store and asked the witness if the deceased was there. The witness told him that the deceased was not there, and Freeman left and returned to the truck. The objection urged to this testimony was to the effect that it was admitting a conversation between two parties not in the presence of the defendant Harris. The solicitor contended that the evidence was admissible, in that the evidence showed a conspiracy between the defendants, Harris, Hamp Freeman, and LeRoy Gross. Error is further assigned in these two grounds because the court failed to charge the law of conspiracy. As to the first

contention, we think that the testimony related to an incident which was admissible to show the movement of Harris just before the homicide. This is true because it is undisputed that the three defendants were together in the truck. If this were not so, we fail to see any harm which could have come to Harris by the admission of this testimony. As to the contention that the court should have given in charge the law of conspiracy, we do not think that there is any merit in this contention, for the statement of the defendant Harris and all of the evidence shows that he was the one who fired the shot. If one of the other codefendants had been on trial, and the question to be proved had been whether they were acting with a common intent and purpose and whether the act of Harris in shooting the deceased was the act of Freeman or Gross, then and in that event there might be merit in this contention. But where, as here, the defendant is the actual perpetrator of a crime, the failure to charge on the law of conspiracy could not possibly harm such a defendant. These grounds are not meritorious.

5. Special grounds 5 and 6 complain because the court refused to permit two witnesses offered by the defendant Harris to testify that, early in the morning on the night preceding the homicide, which occurred about 11 o'clock at night—as these two coworkers with the deceased offered to testify—he was drinking or drunk, and one of the coworkers had difficulty with the deceased. Conceding that this testimony was admissible, it was merely cumulative, and there seems no doubt from the other evidence in the case that the jury were well aware of the fact that the deceased was drinking heavily and was obnoxious. This would not, however, accord the defendant a right, if the State's evidence is true, and if the jury believed it, to take his gun and hunt the deceased down and kill him. These grounds show no reversible error.

The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*