31431. SMITH *v.* THE STATE.

DECIDED JANUARY 23, 1947.   REHEARING DENIED FEBRUARY 20, 1947.

*George G. Finch, Willie Reid Bentley,* for plaintiff in error.

*Lindley W. Camp, Solicitor, E. E. Andrews, Solicitor-General, Durwood T. Pye,* contra.

GARDNER, J. ▮ ▮ When the case was called for trial and before pleading to the merits, the defendant filed a motion to disqualify Judge Jesse M. Wood, Judge of the Criminal Court of Fulton County. The motion to disqualify is: State of Georgia *v.* Claude Smith. Superior Court of Fulton County. Now comes the defendant in the above entitled case and before arraignment and pleading thereto, makes and files this his objection to the Honorable Jesse M. Wood, presiding in said case and for grounds of same says as follows:

"1. That it will be impossible to secure a fair trial before said Judge because of interest, prejudice and bias as will hereinafter more fully appear.

"2. That as this defendant is tried before said judge presiding, the said trial will be coram non judice in that defendant will be denied process of law and equal protection under the 14th Amendment of the Constitution of the United States by reason of the fact that petitioner will not be afforded a legal trial before a fair, impartial and unbiased presiding judge.

"3. Defendant shows that said judge has heretofore on the 26th day of March, 1945, released from serving a sentence on the chain gang of Georgia one Eddie Lee Seals on the grounds that this indictment against this defendant having been procured on the testimony of said Eddie Lee Seals, and said Eddie Lee Seals had expressed a willingness to testify against this defendant on the trial of this case.

"4. Defendant shows that by reason of said order certified copy of which is attached and made a part hereof, said judge disclosed his interest, prejudice, and bias, against this defendant in that by said order releasing said Eddie Lee Seals from the sentence heretofore imposed on him in consideration of his testifying both before the grand jury and against this defendant in the trial of this case before the said judge, all of which will prevent this defendant from having a fair trial and will deny to this defendant due process of law under the 14th Amendment of the Constitution of the United States.

"5. Defendant alleges that the Honorable Jesse M. Wood has

thus stepped aside from his judicial duties as a fair and impartial judge, and become a prosecutor against this defendant in this case.

"6. Defendant alleges that the witness, Eddie Lee Seals, is thus under coercion and duress, in that as said order provides the sentence is suspended at the discretion of the court and until further order of the court.

"7. Defendant alleges that the threat and implication is thus plain that in the event the witness do not testify against this defendant, the court will or may revoke the suspension and place said witness back in the chain gang of Georgia.

"Wherefore, defendant prays that the court recuse himself in the trial against this defendant."

The order referred to is as follows: "State v. Seals No. 188774. Criminal Court of Fulton County sentence of twelve months.

"It appearing to the court that the above named defendant did, at the March-April Term, 1945, of the Superior Court of Fulton County, appear as a witness before the grand jury in the case of the State v. Claude Smith, and that upon defendant's evidence, an indictment was returned against said Claude Smith.

"And it further appearing to the court that upon said indictment being returned and transferred to the Criminal Court of Fulton County, defendant herein not only testified before the grand jury, but showed a willingness also to testify for the State in said case.

"And it further appearing to the court that it is to the best interest of society and in line with the public policy of the State to extend immunity to witness who turn State's evidence.

"It is therefore, considered, ordered and adjudged that the remainder of the sentence originally imposed in the case of the State v. Eddie Lee Seals be, and the same is hereby suspended at the discretion of the court until further order of the court.

"And it is further ordered that A. B. Foster, Sheriff, release said prisoner, this the 26th day of March, 1945. [Signed] Jessie M. Wood, Judge, Criminal Court of Fulton County."

It is alleged in the certiorari that the trial judge was without authority of law to release Seals by such order or in any other manner; that this authority is vested exclusively in the Prison Board of the State of Georgia. It does not appear from the motion to disqualify or from the order of Judge Wood, copied above, (1)

in what court Seals was convicted; (2) if he was convicted in the criminal court of Fulton County, it does not appear that the term of court at which he was convicted had expired and the case had passed out of the breast of the court; (3) it does not appear that Seals was released under the order of Judge Wood; (4) it does not appear that he (Seals) testified in the instant case; (5) there was no testimony introduced on the motion to disqualify.

We will therefore not discuss these features, but will direct our remarks to the question as to whether the motion to disqualify and the certified order of the court attached thereto is sufficient as a matter of law to disqualify Judge Wood. The only statutory provisions with reference to disqualification of a trial judge are contained in the Code (Ann. Supp.), § 24-102, which reads as follows: "No judge or justice of any court, no ordinary, justice of the peace, nor presiding officer of any inferior judicature or commission shall sit in any cause or proceeding in which he is pecuniarily interested, nor preside, act, or serve, in any case or matter, when such judge is related by consanguinity or affinity to any party interested in the result of the case or matter, within the sixth degree, as computed according to the civil law, and relationship more remote shall not be a disqualification; nor in which he has been of counsel, nor in which he has presided in any inferior judicature, when his ruling or decision is the subject of review, without the consent of all parties in interest: Provided, that in all cases in which the presiding judge of the superior court may have been employed as counsel before his appointment as judge, he shall preside in such cases if the opposite party or counsel agree in writing that he may preside, unless the judge declines so to do: and provided further that no judge or justice of any court, no ordinary, justice of the peace, nor presiding officer of any inferior judicature or commission shall be disqualified from sitting in any cause or proceeding because of the fact that he is a policyholder or is related to a policyholder of any mutual insurance company which has no capital stock. But nothing in the last proviso shall be construed as applying to the qualifications of trial jurors." These provisions are exhaustive. It thus is readily seen that the motion to disqualify Judge Wood contains no ground specified in the statutes. "The grounds of disqualification provided in the statutes are exhaustive and do not include prejudice or bias that is not based

on pecuniary or relationship interest." *Columbian Peanut Co.* v. *Pope,* 69 *Ga. App.* 26 (24 S. E. 710), and citations. It would perhaps be sufficient to drop the question here rather than make further comment, but since the parties for both sides argue the question at length and since it is a question that might arise again in the trial courts of the State, we feel it our duty to discuss it further. We will discuss it from the viewpoint that the State's attorneys did have an agreement with Seals that if he would truthfully testify as to what he knew concerning the charges against the defendant Smith both before the grand jury and the trial court, and that Judge Wood approved this agreement of the State's attorneys and passed the order releasing Seals and that Seals was released by virtue of it. To state it differently, is it legal for the prosecuting officers to "trade with" a defendant provided he will testify truthfully against his codefendant and does the approval of such an agreement by the trial judge disqualify the trial judge in the absence of any statute? The only possible conclusion which could be urged against a trial judge in such a situation is on the ground of bias or prejudice. *Long* v. *State,* 25 *Ga. App.* 22 (102 S. E. 359), reads: "1. Bias or prejudice on the part of a judge does not disqualify him, in the absence of a statutory provision on the subject. 17 Am. & Eng. Enc. Law, 738; 23 Cyc. 582; *Elliott* v. *Hipp,* 134 *Ga.* 848 (68 S. E. 736, 137 Am. St. R. 272, 20 Ann. Cas. 423).

"(a) The only statutory provisions in Georgia on the subject of the disqualification of a judge are in § 4642 of the Civil Code of 1910. *Elliott* v. *Hipp,* supra. In the instant case it follows that the court did not err in overruling the special plea which set up that the judge should disqualify himself, for the reason that he refused to allow the defendants, although charged with a misdemeanor only, to make bail and further that he stated in his charge to the grand jury, and in the presence of the petit jurors, that he would take full responsibility for not allowing the defendants to make bail. Nor was this statement of the court violative of § 1058 of the Penal Code of 1910, which forbids the judge to express any opinion as to the facts. That section relates only to statements made during the actual trial of the case, or in the charge to the petit jury trying the case. *White* v. *State,* 7 *Ga. App.* 20 (65 S. E. 1073)." See also 33 C. J. § 150, p. 99, note 25. It was the

rule at common law that bias or prejudice did not disqualify a judge. 102 A. L. R. 393. Under the Title "Judges" in 30 Am. Jur. § 76, p. 785, it was said: "The words 'bias' and 'prejudice' refer to the mental attitude or disposition of the judge toward a party to the litigation, and not to any views that he may entertain regarding the subject matter involved. A judge is not disqualified from presiding at a criminal trial by the fact that he looks with abhorrence on the commission of crimes; or because he belongs to an organization for the suppression of crime, or participates in movements to enforce the law on particular subjects." We might state here that the record does not reveal that Judge Wood knew or ever saw Seals. In *Cochran* v. *State,* 113 *Ga.* 736 (39 S. E. 337), it is said: "A judge of the superior court is not disqualified from presiding at the trial of an indictment merely because previously thereto he held a court of inquiry and bound the prisoner over." In *Heflin* v. *State,* 88 *Ga.* 151 (14 S. E. 112, 30 Am. St. R. 147), it is held that a trial judge in a charge of perjury is not disqualified for the reason that he presided in the trial of a case in which the alleged perjury was committed. The defendant cites and relies upon *Porter* v. *Thomasville,* 16 *Ga. App.* 313 (85 S. E. 283). That case is not in point. In that case the lower court was reversed because the mayor was pecuniarily interested in the conviction, and was acting as a judge and jury. In *Howard* v. *State,* 60 *Ga. App.* 229, 237 (4 S. E. 2d, 418), this court said: "Another ground insisted upon was that immunity had been promised to State witnesses by the solicitor-general and the preceding grand jury, and that this constituted a reason to abate the indictment. The promise of immunity by the State's counsel to a witness for the State has and can have no effect on the rights of the accused, save that it may be considered by the jury as affecting the credibility of the witness when he is offered. Whether or not such a body or officer may promise immunity, and the State be bound thereby, is a question which can arise only as between such witness and the State, and not as to the person against whom such witness may testify. As was said in U. S. v. Ford, 99 U. S. 594 (25 L. ed. 399), 'It has never been held that one who is guilty of crime can not be punished merely because others have not been prosecuted or convicted. The extension of immunity to a particeps criminis who has turned State's evidence has existed from time

immemorial.' The law itself provides for immunity in certain cases; and as against the provision that a witness is not compelled to give testimony against himself, we find that the Code, § 58-116, which is in reference to giving testimony in liquor-law violations provides: 'but a witness shall not be prosecuted for any offense as to which he testifies before the grand jury.' The Code, § 26-6407, declares: 'On the trial of any person for offending against §§ 26-6401, 26-6403, 26-6404, 26-6405, or 26-6406, any other person who may have played and bet at the same time or table shall be a competent witness, and be compelled to give evidence; and nothing then said by such witness shall at any time be received or given in evidence against him in any prosecution, except on an indictment for perjury in any matter to which he may have testified.' We are not called on here to decide whether the alleged promise of immunity was effectual or binding. This defendant is not concerned therewith. Such a promise affects only the witness to whom it is made. It is admissible insofar as it may affect the credibility of the witness to whom immunity has been promised; beyond this it does not concern the defendant on trial. See 16 C. J. 94." In U. S. v. Ford, 99 U. S. 584, 595 (25 L. ed. 399), it is said: "Accomplices in guilt, not previously convicted of an infamous crime, when separately tried, are competent witnesses for or against each other; and the universal usage is that such a party, if called and examined by the public prosecutor on the trial of his associates in guilt, will not be prosecuted for the same offense, provided it appears that he acted in good faith and that he testified fully and fairly."

In U. S. v. Ernest, 280 Fed. 515, 516, it is said: "Always this policy of immunity has been to serve the prosecution and never the defense. Where numbers are involved in an offense, the advantage is with the defense. As a rule, offenders hang together, lest otherwise they hang separately. This renders more difficult the task of the prosecution to prove guilt beyond a reasonable doubt, and because thereof is this policy to aid the prosecution to accomplish justice."

In Commonwealth v. St. John, 173 Mass. 566 (54 N. E. 254, 73 Am. St. R. 321), that court said: "The immunity and protection which may be promised from the consequences of crime on condition of a full disclosure and readiness to testify are not a matter of right, but rest in the last resort on the sound judicial

discretion of the court having final jurisdiction to sentence. . . When such promises are made by the public prosecutor or with his authority, the court will see that due regard is paid to them and that the public faith which has been pledged by him is duly kept.".

In People v. Bogolowski, 326 Ill. 253 (157 N. E. 181), the court ruled that the promise of immunity made in a murder case by the public prosecutor must be kept.

In Ingram v. Prescott, 111 Fla. 320 (149 So. 369), that court said: "From the earliest times, it has been found necessary for the detection and punishment of crime, for the State to resort to the criminals themselves for testimony with which to convict their confederates in crime. While such a course offers a premium to treachery, and sometimes permits the more guilty to escape, it tends to prevent and break up combinations, by making criminals suspicious of each other, and it often leads to the punishment of guilty persons who would otherwise escape. Therefore, on the ground of public policy, it has been uniformly held that a State may contract with a criminal for his exemption from prosecution if he shall honestly and fairly make a full disclosure of the crime, whether the party testified against is convicted, or not. L. R. A. 1918A, page 376. Note to report of case of Faucett v. State, 10 Okla. Crim. Rep. 111, 134 Pac. 839, L. R. A. 1918A, page 372; Cameron v. State, 32 Tex. Crim. Rep. 180, 40 A. S. R. 763, and notes; Section 8311 C. G. L. 6017 R. G. S. sets up such a statutory agreement barring the State from prosecution in certain cases where the accused, without any agreement on his part, is compelled to give evidence in certain classes of cases. . . Although it is universally conceded that the district attorney, or other public prosecutor may, with the consent of the court, enter into an agreement with an accomplice that if he will testify fully and fairly, in a prosecution against his accomplices in guilt, he shall not be prosecuted for the same offense, and that if the accomplice performs on his part, he is entitled to such protection as the law affords, yet the weight of authority upholds the proposition that if such an agreement is made with the prosecuting attorney alone, without the consent or advice of the court, it is of no effect as a protection to the accomplice, if he is afterwards placed on trial in violation of that agreement. State v. Graham, 41 N. J. L. 15; 32 Am. Rep. 174; People v. Peter, 48 Cal. 251; People v. Bruzzo, 24 Cal. 41; United

States *v.* Ford, 99 U. S. 594, 25 L. ed. 399; Lindsay *v.* People, 63 N. Y. 143; Commonwealth *v.* Woodside, 105 Mass. 594; Wight *v.* Rindskopf, 43 Wis. 344." Thus that tribunal in a well considered, clearly stated, and learned opinion expressed the almost universal rule which prevails throughout this country on the question now under consideration. While it is true that in the case at bar Seals was not offered immunity from prosecution, he was given a release from serving his sentence on the public works. We can discern no difference between the principle of law applicable to both situations.

■ The defendant contends further that he was "denied due process of law and equal protection under the Fourteenth Amendment to the Constitution of the United States in that he was not afforded a fair trial before an impartial and unbiased judge." With this view we can not agree. In the case of Tumey *v.* Ohio, 273 U. S. 510, 523 (47 Sup. Ct. 437, 71 L. ed. 749, 50 A. L. R. 1243), Chief Justice Taft, speaking for the court, and in construing that portion of the Fourteenth Amendment, said: "All questions of judicial qualification may not involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion." In that case the facts are, succinctly, that a mayor of a municipality was trying an accused for violation of a municipal ordinance. The ordinance provided that the mayor receive as a part of his compensation the cost of the prosecution. This amounted to a substantial sum of approximately $100 per month in addition to his regular salary. It will thus be noted that the facts in that case are entirely different from the facts in the instant case. Moreover, the mayor was pecuniarily interested in that case. Our statute (Code, § 24-102), disqualifies a trial judge from presiding in any case in which he is pecuniarily interested. As we have heretofore observed, Judge Wood was not in any wise peculiarily interested in the result of the trial in the instant case.

■ After conviction the defendant obtained a writ of certiorari. The petition for certiorari contained seventeen grounds of error. The first four grounds are general, the others special. We will deal first with the special grounds but not in their numerical order.

Special ground 13: This ground assigns error because the court,

without a written request, failed to charge on the subject of impeachment. It is alleged that the witness, Jake Davis, while testifying for the State regarding count 15 which was alleged to have been committed on October 9, 1944, testified on direct examination that he was on that date engaged in the lottery game for the accused. It is alleged that on cross-examination he testified that on this date he was in attendance upon the World Series in another State. He testified that he left for the World Series about October 1, 1944, and remained away for about two weeks and therefore, being away on the 9th day of October he did not turn in any lottery tickets for the accused on that date. This assignment of error is based on that portion of the Code, § 38-1806 as follows: "But if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely unless corroborated by circumstances or other unimpeached evidence." The trial court in answer to the certiorari denied the correctness of the brief of evidence attached to and made a part of the petition for certiorari, and attached to his answer what he certified to be a correct brief of evidence. In the brief of evidence attached to the answer of the trial judge on this particular point, it appears that on cross-examination the witness stated: "As to my swearing to Mr. Camp that I turned in the lottery to Mr. Smith on the 9th day of October, I was not here to turn it in but I had someone turn it in. I did not turn it in to Mr. Smith personally. As to my statement that I worked and turned in the lottery to Mr. Smith on the 9th day of October being incorrect, I went to the World Series; I did not turn it in to him myself. I didn't turn in any lottery myself, in the County of Fulton, State of Georgia, on the 9th day of October, 1944, to this defendant. That is the only time I was out of town. I was in town every day except those two weeks." It does not clearly appear from the brief of evidence submitted by the trial judge that the defendant testified that he was in Atlanta on the 9th day of October, 1944, and personally turned in the lottery tickets to the defendant. We think that the fair import of his testimony is that he was actively participating in the lottery with the defendant as one of the defendant's operators during all the time covered by all the counts of the indictment upon which he was convicted. It is unquestionably true that it is reversible error for the court to fail to charge the Code section, supra, where ap-

plicable, without a written request. *Jones* v. *State,* 70 *Ga. App.* 431 (28 S. E. 2d, 373); *Smaha* v. *George,* 195 *Ga.* 412 (24 S. E. 2d, 385). But these decisions are also authority to the effect that it must appear, among other things, that the witness admitted, on the trial, that he had wilfully and knowingly sworn falsely or that the nature and character of his own testimony must be such as to render the purpose to falsify manifest.

It does not appear from the record that the witness admitted that he knowingly and falsely testified, nor does it appear that his purpose to falsify is plainly manifest from his own testimony. This ground is without merit.

■ Special ground 12: This ground assigns error because the court charged the jury that each count of the indictment alleged a separate and distinct offense, whereas the defendant contends that there was only one offense charged in the fifteen counts. This contention has been decided adversely to the contentions of the defendant in the case of *Martin* v. *State,* 73 *Ga. App.* 573 (4-8) (37 S. E. 2d, 411).

The indictment in the instant case was drawn in the main in the language used in the *Martin* case. The court did not err in overruling this ground of the petition for certiorari.

■ Special grounds 14, 15, 16, and 17: Error is assigned in these grounds because the court overruled a motion for a mistrial because of alleged improper argument of the prosecuting attorney and the court did not rebuke the prosecuting attorney for the alleged improper remarks. In order that we may more clearly discuss these assignments of error, we quote them here:

"14. Petitioner avers, alleges and complains that the court erred in overruling the motion of the defendant for a mistrial on the ground of inflammatory argument on the part of the prosecuting attorney and in allowing said argument to continue, said argument being as follows:

"Your Honor, if you sent 25 of them to the chaingang today, they would have 25 new negroes working, taking their place tomorrow. The evidence shows that. Pepper Martin, the very day he goes to the chaingang another pick-up man takes his place, help keep it going. Slow up the bug racket? There is lottery all over the country, and we can not stop it except to get the big shot. That's what they call him. Here's all the pick-up men brought

over here that testified after the police caught Claude Smith. Simply because the big shot stays so far back in the picture, the only thing he touches is the money. He gets them to handle his lottery tickets, ribbons, check his numbers in the checking station, while he sits back and reaps the harvest, takes the money and crams it in his pocket. How to catch him? There is no way on earth except through grand jury investigation, bringing these witnesses to that body, and try to break them down and tell the truth about it.

"15. Petitioner avers, alleges and complains that the court erred in overruling defendant's motion for a mistrial as a result of the inflammatory and improper argument on the part of the prosecuting attorney and in allowing his argument to continue, as follows:

"Your honor, please, and gentlemen of the jury: I want to thank you gentlemen very greatly for your attention given to this long array of witnesses, and for your consideration of all the evidence adduced from this witness stand in this case. I am very thankful and very grateful that your brilliant and efficient solicitor general has seen fit to come into this court to aid in this prosecution. It is not a matter of personalities with us. It is not a matter that the defendant is Claude Smith. It is a matter, gentlemen of the jury, of us doing our duty, and I am proud to tell you that your solicitor general and your solicitor of the criminal court can work hand in hand, arm in arm, to help destroy a racket, that has, as its foundation, the basic destruction of good government in Fulton County, and I am proud of it.

"Mr. Bentley. Your honor, we want to make a motion at this time for a mistrial, on the ground that this solicitor has made an argument to this jury on which there is no evidence. No evidence has been produced in this trial about any particular racket underlying or destroying the good government of Fulton County. That's an improper statement. We ask that a mistrial be granted at this time on that point.

"The court: 'The court overruled the motion for mistrial.'

"16. Petitioner avers, alleges and complains that the court erred in overruling the defendant's motion for a mistrial because of the improper and inflammatory argument of the prosecuting attorney and in allowing said argument to continue, as follows:

"Why didn't you bring some of these other negroes in here and

let them tell this jury that they. . . Claude Smith was not operating a lottery out there on Houston Street, as alleged in this indictment of 15 counts, and I ask you, Claude Smith, why didn't you tell this jury that Rawlins was not telling the truth if he was not. He said he was selling him 10 to 15 books, amounting to 2500 or 3000 lottery books a month or two months. Nobody says that it is not true. The assumption is, gentlemen of the jury, that it is true, and I ask you, in the name of fair play and justice, why would a man, running a garage, need to use three thousand books. This red cap, Russell Palmer, says he got him over there, brought him over and gave him ten dollars, and Claude Smith did not deny it; carried it to the Union Station, James Anderson, says he went to work for you in July and on the 13th day of July you have. . . James Anderson bought an automobile that he says this defendant, Claude Smith, bought for him, and that he returned it to him when they went out of the lottery business. Why didn't you explain that to the jury? Howard Holiday says when the grand jury went to investigating this case, that he met Claude Smith down here somewhere in company with Fred Martin, I believe—Holiday didn't say that one of the other said that Palmer—he, Howard Holiday says you told him to come up here and deny that you even knew him. Why didn't you tell this jury something about that? What they want to do is to fool you. That is what they want, gentlemen of the jury, and by short cuts lead an honest jury in Fulton County to pardon the champion lottery racketeer of them all, and it is indicated by this evidence. . .

"17. Petitioner avers, alleges and complains that the court erred in overruling the defendant's timely motion for a mistrial because of the improper and inflammatory argument on the part of the prosecuting attorney and in allowing said argument to continue, as herein set forth:

"'They complain about us using these witnesses. You can not go to the churches and get witnesses to use in a lottery case. You can not go to an established, organized business and find witnesses to use in a lottery case. You have to go, gentlemen of the jury, to people that have been engaged in this business, and that is the type of witnesses that we have brought here in this case. Naturally, we would much prefer to bring high class business men, church people, established business people in here to testify, but, gentle-

men of the jury, this type people are not engaged in the lottery business, and when they complain, your honor, about us using their type of witnesses, I respectfully submit that they are all their associates and not ours,—you gave them a barbecue. We did not—25 or 20 pick-up men out there at Bishop's Lake, at a barbecue given by this defendant, Claude Smith, and not one word of denial about it. Not one word. Now, gentlemen of the jury, this case is proved. Every date in these 15 counts is proved, every one of them. According to your expert testimony, stands on its own footing, each of them is an individual transaction, and I ask you gentlemen of the jury, based on this evidence, to write a verdict in this case that will be a warning forever that citizens of Fulton County believe in law enforcement and are not going to let any racketeer come in here with the lottery business, like this' defendant, with an income of approximately six thousand dollars a day, and destroy good government in Fulton County. Convict this defendant and it will stop other people from operating in the lottery.'"

The evidence in this case covered a wide range as to transactions, time, and people involved. Were the testimony confined to the excerpts referred to in the argument of the prosecuting attorney as set out in these grounds, there might be some virtue in these assignments. But when we read these assignments of error in the light of all the evidence which we have carefully done, we are constrained to hold that the authorities cited on behalf of the defendant show no cause for reversal. The authorities relied on are: *Manning* v. *State,* 13 *Ga. App.* 709 (79 S. E. 905) ; *Hammond* v. *State,* 51 *Ga. App.* 225 (179 S. E. 841) ; *Giles* v. *State,* 67 *Ga. App.* 357 (20 S. E. 2d, 211) ; *Washington* v. *State,* 87 *Ga.* 12 (13 S. E. 131). We think the record in this case is more similar to the facts and assignments of error in the cases which we will now cite rather than to those cited by the defendant. This court held in *Walker* v. *State,* 5 *Ga. App.* 367 (63 S. E. 142) : "His chief complaint now is that during the argument of the case the solicitor-general used the following language: 'Do as you please. Turn Mr. Walker loose if you want to, and let him go on selling whiskey again.' Counsel for the defendant, at the time, objected to the argument and moved for a mistrial. The court merely replied, 'Stick to the record.' To hold that the solicitor-general exceeded the range of legitimate argument by use of the language quoted

above would be to limit counsel within bounds wholly unreasonable. Counsel should not go outside the facts appearing in the case and the inferences to be deduced therefrom, and lug in extraneous matters as if they were a part of the case; but upon the facts in the record, and upon the deductions he may choose to draw therefrom, an attorney may make almost any form of argument he desires. Of course, there are certain exceptions dictated by the decorum of the court and similar considerations; but the remarks here objected to are within no such exception. We are not inclined to countenance any undue hampering the right of counsel to argue cases in whatever manner may seem to them most expedient." There are decisions of the Supreme Court which strongly incline us to the view that neither of these grounds shows cause for a reversal. *Patterson* v. *State,* 124 *Ga.* 408 (52 S. E. 534); *Floyd* v. *State,* 143 *Ga.* 286 (84 S. E. 971); *Lucas* v. *State,* 146 *Ga.* 315 (7) (91 S. E. 72); *Nix* v. *State,* 149 *Ga.* 304, 308 (100 S. E. 197); *Bailey* v. *State,* 153 *Ga.* 413 (4) (112 S. E. 453); *Hammond* v. *State,* 156 *Ga.* 880 (4) (120 S. E. 539).

■ Special ground 5: This ground assigns error because the court, over timely objection, permitted witness Densmore, a detective for the City of Atlanta, to testify that the lottery was in operation in Atlanta, Fulton County on the several dates covering the dates embraced within the several counts of the indictment. This identical question was fully dealt with adversely to the defendant in the case of *Mills* v. *State,* 71 *Ga. App.* 353 (30 S. E. 2d, 824).

■ Special ground 6: Error is assigned because the court permitted, over objection of the defendant's counsel, leading questions to be propounded to a State's witness. It is the general rule that, the allowance of a leading question in the examination of a witness is a matter of discretion with the court and is not cause for a new trial. *Peretzman* v. *Simon,* 185 *Ga.* 681 (196 S. E. 471). There is no merit in this ground.

■ Special ground 7: Before the trial began, the defendant demanded the names of the witnesses who testified before the grand jury. The prosecuting attorney furnished to the defendant a list of the names of the witnesses who testified before the grand jury. During the progress of the trial the State offered James Anderson as a witness in behalf of the State. Counsel for the defendant objected on the ground that James Anderson appeared before the

grand jury and testified and that the name of this witness was not on the list furnished to counsel for the defendant by the prosecuting attorney. The State contended that James Anderson did not appear before the grand jury against the defendant. Thus an issue was made as to whether James Anderson did appear before the grand jury and testify on the indictment against the defendant. The trial judge became the trior of this issue. The witness himself, as well as the Solicitor General of the Fulton Judicial Circuit testified before the court on that issue. While the testimony of the witness is somewhat equivocal, as to whether he was sworn on the indictment before the grand jury or on some other indictment involving offenses under the lottery statute, that of the solicitor general is positive to the effect that the witness was not sworn before the grand jury on the indictment against the defendant. The judge, as the trior of this issue of fact, was authorized to find in favor of the State. Under the Code, § 27-1403, art. 1, § 1, paragraph 6 of the Constitution of the State of Georgia, at the call of the case the defendant is entitled to a list of the witnesses who appeared and testified before the grand jury on the indictment then pending before the grand jury. A witness, even though his name does not appear on the indictment at the time the case is called for trial, and who did not testify before the grand jury and whose name was not furnished on demand by the prosecuting attorney to the defendant, may nevertheless be sworn as a witness for the State in the trial of a case. This ground furnished no reason for reversal.

■ Special grounds 8 and 10: These grounds each allege that the court erred in failing to charge as requested in writing. The court gave one of the requests in his charge to the jury, but in a recharge withdrew that written request. The first of these requests relates to whether the lottery transaction was completed in a single day, and the second relates to the effect of a bet not being paid off until a day following that on which it was made. It appears from an examination of the charge of the court as a whole as applied to the evidence in the case, that the court fairly and correctly instructed the jury on these issues. *Martin* v. *State,* supra.

■ Special ground 9: This ground complains that an excerpt from the charge of the court was in conflict and repugnant to an instruction previously given. The charge as a whole shows that

in the recharge the court withdrew a previous instruction and gave another in lieu thereof. When we view the charge as a whole, we find no reversible error in it. There is no reversible error in this ground.

■ Special ground 11 complains that the charge was as a whole argumentative, inaccurate, and over emphasized the contentions of the State. We do not think this ground is well taken under this record.

■ As to the general grounds, the evidence is sufficient to sustain the conviction.

The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*