## 63028. HANSON v. THE STATE.

BIRDSONG, Judge.

Transactional Immunity. Emmett Eugene Hanson was arrested in 1979 by DeKalb County Police for possession and selling methaqualone in violation of the Controlled Substances Act. In exchange for his cooperation in furnishing evidence against other dealers and drug-related business in DeKalb County, the then-incumbent District Attorney prepared a letter addressed to Hanson granting him ". . . immunity from prosecution for any and all violations of law committed prior to September 9, 1980 within my jurisdiction. This grant of immunity is based upon information and assistance granted this office regarding drugs and gambling investigations." This letter was called to the attention of the DeKalb Superior Court and signed by a judge thereof. On the same date, the District Attorney entered a notation of dismissal on the file. It is uncontested that Hanson did cooperate with the District Attorney and furnish information and assistance pursuant to the letter of immunity. In 1980, the incumbent District Attorney was defeated in the election for that office. When the new District Attorney assumed office in January 1981, in disregard of the earlier notation of dismissal, he submitted the information to a grand jury which indicted Hanson for possession and sale of methaqualone. Hanson filed a motion to abate and quash the indictments on the ground that he had been granted immunity from trial on those offenses. The state resisted the motion, arguing that transactional immunity does not fall within the parameters of Code Ann. § 38-1715. That code section, as aptly argued by the state, authorizes only a grant of use or derivative use immunity. Therefore, the state argues the immunity grant given in September, 1980 was not authorized by this section of the Code. See *Corson v. Hames,* 239 Ga. 534 (238 SE2d 75). The trial court denied the motion to abate and quash. Hanson filed an interlocutory appeal to this court which was granted. *Held:*

We first observe that this case does not involve use or derivative use immunity as that more limited form of immunity contemplates. The purpose of such immunity is to overcome a criminal defendant's Fifth Amendment protection against self-incrimination by granting that defendant use or derivative use immunity from any criminal misconduct disclosed by compelled testimony. In this case we are dealing with the more general grant of immunity by which the prosecutor may contract with a source of criminal information to give information in exchange for governmental forgiveness of specific acts or of any case of misconduct. In this case there was general forgiveness for all criminal acts of Hanson occurring prior to

September 8, 1980 in DeKalb County in exchange for the volunteered assistance and information given by the defendant Hanson. Thus, we deal here with generally accepted principles of law enforcement and prosecutorial discretion; therefore, we are not limited by the procedural guideline of Code Ann. § 38-1715.

It is conceded by both parties to this appeal that in this state there is no statutory authorization for immunity other than the use immunity established in 1975 by Code Ann. § 38-1715. Thus, in order to gain an understanding of principles applying to "transactional" immunity, we must look to the antecedent principles of the common law. This court in *Smith v. State,* 74 Ga. App. 777 (41 SE2d 541) at p. 785, quoting with approval the case of Ingram v. Prescott, 111 Fla. 320 (149 S 369) stated: " 'From the earliest times, it has been found necessary for the detection and punishment of crimes, for the State to resort to the criminals themselves for testimony with which to convict their confederates in crime. While such a course offers a premium to treachery, and sometimes permits the more guilty to escape, it tends to prevent and break up combinations, by making criminals suspicious of each other, and it often leads to the punishment of guilty persons who would otherwise escape. Therefore, on the ground of public policy, it has been uniformly held that a State may contract with a criminal for his exemption from prosecution . . . whether the party testified against is convicted, or not.' "

One of the earliest statements of what amounts to transactional immunity is found in the case of United States v. Ford, 99 U. S. 594 (25 LE 399), a case decided by the Supreme Court in 1878. In that case, the Supreme Court discussed the rights and obligations existing between the sovereign and the defendant where the sovereign seeks the assistance of the criminal element in order to solve crime. "Public policy and the great ends of justice . . . require that the arrangement between the public prosecutor and the accomplice should be carried out . . . if the district attorney failed to enter a *nolle prosequi* to the indictment, 'the court will continue the cause until an application can be made for a pardon.' " United States v. Ford, supra, p. 605. At p. 602 of the same case, the Supreme Court said: " . . . it is . . . clear that the party, if he testified fully and fairly, may make it the ground of a motion to put off the trial, in order that he may apply to the executive for the protection which immemorial usage concedes that he is entitled to at the hands of the executive." The case further stated, at p. 606, that "[s]hould it be objected that the application may not be successful, the answer of the court must be . . . that we are not to presume that the equitable title to mercy which the humblest and most criminal accomplice may thus acquire by testifying to the truth in a . . . court will not be sacredly accorded to him by the [governor], in

whom the pardoning power is vested."

We recognize that transactional immunity flowing from full disclosure of crime is not a matter of right, but rests in the sound judicial discretion of the court which can determine whether the defendant has lived up to his end of the bargain. However, we conclude that when the defendant does deliver what he has promised and the state's promises have been made by an appropriate public official (such as the District Attorney in this case), ". . . the court will see that due regard is paid to them and that the public faith which has been pledged by him is duly kept" (*Smith v. State,* supra, p. 785), and particularly where the promise of immunity had been approved by the court itself.

We recognize that in the first instance the decision to enter into such an agreement rests with the District Attorney and that enforcement of the grant of immunity rests within the sound discretion of the trial court. The implication contained in the Ford case, supra, is that the District Attorney should enter a dismissal or nolle prosequi to the indictment. (A note of dismissal was in fact entered in Hanson's file.) Failing that, the trial court should continue the cause until an application can be made for a pardon. The same case also presumes that in the event a defendant must pursue his equitable remedy all the way to the sovereign (governor), the governor will indeed grant the pardon as a matter of "immemorial usage." Inasmuch as the trial court should see that due regard is paid to the promises of the public prosecutor and that the public faith which has been pledged by the prosecutor is duly kept, it seems appropriate for the trial court in this case to vindicate the public's faith by sustaining the motion presented by Hanson.

In view of the above, this case is reversed and remanded to the trial court for action consistent with this opinion.

*Judgment reversed with direction. Shulman, P. J. and Sognier, J., concur.*

DECIDED FEBRUARY 17, 1982 —
REHEARING DENIED MARCH 8, 1982 — 

*Hardaway Young III,* for appellant.
*Robert E. Wilson, District Attorney, Ann Poe Mitchell, Assistant District Attorney,* for appellee.