32448.   KLEIN *v*. MARYLAND CASUALTY COMPANY
*et al.*

DECIDED JUNE 22, 1949.   REHEARING DENIED JULY 8, 1949.

*John Ackbar Darsey*, for plaintiff.

*T. Elton Drake*, for defendants.

PER CURIAM.   This is a workmen's compensation case.   Mrs. Marie E. Klein, the widow of Clarence Delmar Klein, filed a claim for compensation with the State Board of Workmen's Compensation on account of the death of her husband, a traveling salesman, who was killed in an automobile accident on the Lawrenceville-Atlanta Highway on November 24, 1947.   The employer of the claimant's husband was Rich & Morgan Inc., and its insurance carrier was Maryland Casualty Company.   A single director denied compensation; that award was approved by the full board (one director dissenting) and affirmed by the superior court.   The claimant excepted.

It was admitted that the deceased was an employee of Rich & Morgan Inc., on or about November 24, 1947, when he had an accident on the highway between Atlanta and Lawrenceville, Georgia, in Gwinnett County, and received injuries resulting in his death.   The case was defended under the provisions of the Code, § 114-105, that "No compensation shall be allowed for an injury or death due to the employee's wilful misconduct . . or due to intoxication."   That section also provides that the burden of proof shall be upon him who claims an exemption or forfeiture thereunder.

It appears from the testimony that the deceased was in Wilmington, North Carolina, on business for his employer on the morning of the day of the accident, and that he left Wilmington for Atlanta in his car accompanied by C. L. Austin, one of his customers who was riding with him to Atlanta at his suggestion.   The deceased was drinking when Austin got in the car.   When they were two or three miles out from Wilmington the deceased asked Austin if he would have a drink.   They stopped and both

had a drink. They both had two other drinks somewhere in South Carolina. Austin had only the three drinks but the deceased kept on drinking. The deceased drove the car until they were near the Georgia line when Austin started driving because the deceased was driving recklessly. The deceased kept on drinking after Austin started driving, taking "two or three, maybe four" more drinks. They stopped at Washington, Georgia, shortly after 6 o'clock p. m. to get gas. The deceased went into the filling station to call his wife on the telephone and while there he had another drink.

After leaving Washington the deceased wanted Austin to drive faster and they had quite an argument about the driving. The deceased several times pushed Austin's leg down on the accelerator trying to get him to go faster. For about thirty minutes before the accident the deceased was asleep or in a stupor, and several times leaned over on Austin who pushed him off; and his conversation, except about driving, did not make sense. As to just how the accident occurred Austin testified as follows: "We hit a kind of a dip and he fell over on me. Well, I was pushing him off when I saw the car coming and as I was getting him off I lost control and I was getting back on my side of the road. . . I had to take my hand and try to push him off. . . I took one hand and pushed him back and tried to drive with the other hand." Austin testified also that the falling of the deceased on him caused him to lose control of the car. A witness who was at the filling station in Washington when Austin and the deceased stopped there testified that he saw the deceased and had a chance to observe his condition; that he would think the deceased had the appearance of a man who had been drinking, and was not in a condition to drive a car because of his drinking. The operator of the station testified that he had a couple of drinks himself and would not say the deceased was drinking or that he was not drinking.

It is conceded that the burden was on the employer and its insurer of showing the wilful misconduct or intoxication of the deceased, and that his wilful misconduct or intoxication was the proximate cause of the accident. "Intoxication does not consist merely in having partaken of intoxicating liquor, or in being

to some extent under the influence of it. Drunkenness, or intoxication, is a condition where one is under the influence of intoxicating liquors to the extent that he is not entirely at himself, or his judgment is impaired, and his acts or words or conduct is visibly and noticeably affected. *Sapp* v. *State*, 116 *Ga.* 182 (42 S. E. 410)." *Parks* v. *Maryland Casualty Co.*, 69 *Ga. App.* 720, 725 (26 S. E. 2d, 562).

Applying this definition of drunkenness to the evidence, we think it is clear and plain that the finding of the single director against compensation, which was approved by the full board and affirmed by the superior court, was authorized and supported by the evidence. It appears that the deceased was drinking early in the morning before Austin got into his car with him in Wilmington, that they took a drink shortly after leaving Wilmington, and had two other drinks together somewhere in South Carolina. Although Austin testified that he himself drank no more during the trip, the deceased kept on drinking, taking several other drinks during the afternoon, the last one at Washington shortly after 6 o'clock p. m. After leaving Washington the deceased manifested his drunkenness or intoxication by doing things tending to show that he was not entirely at himself, and that his judgment was impaired, his acts, conversation and conduct being visibly and noticeably affected by his drinking. Shortly before the accident, the deceased was asleep or in a stupor, and leaned over on Austin several times causing Austin to have to push him off. As to the immediate cause of the accident, it appears that the deceased fell on Austin when the car hit "a kind of a dip," and in pushing him off Austin lost control of the car, while driving with one hand, and ran into the approaching car before he could get back on his side of the road.

Counsel for the claimant contend that the "any evidence" rule is not applicable to the defense made by the employer because of the burden placed upon them by the statute. Although we see no legal reason why that rule is not applicable, it makes no difference in this case under the evidence as we construe it. It fully authorized the award without regard to the "any evidence" rule. We think this case falls under the general proposition that findings of fact by the State Board of Workmen's Compensation, on the question of wilful misconduct or intoxication, and whether

the wilful misconduct or intoxication of the deceased was the proximate cause of the accident, are conclusive and binding on this court when supported by the evidence. See *American Mutual Liability Ins. Co.* v. *Adams*, 32 *Ga. App.* 759 (124 S. E. 801); *Employers Liability Assurance Corp.* v. *Montgomery*, 45 *Ga. App.* 634 (165 S. E. 903); *Ætna Life Ins. Co.* v. *Carroll*, 169 *Ga.* 333 (150 S. E. 208); *Fried* v. *U. S. Fidelity & Guaranty Co.*, 192 *Ga.* 492 (15 S. E. 2d, 704).

The superior court did not err in affirming the award denying compensation.

Pursuant to the Act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232, Code (Ann. Supp.) § 24-3501), requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment affirmed. Sutton, C. J., MacIntyre, P. J., Gardner and Worrill, JJ., concur. Felton and Townsend, JJ., dissent.*

FELTON, J., dissenting. The burden of proof to show that the deceased's intoxication was the proximate cause of his death was upon the employer and the insurance carrier. I do not think that they succeeded in carrying this burden. Under the circumstances of this case he might have been killed if he had been asleep and perfectly sober. The various foolish acts the deceased committed before he went to sleep are beside the point and serve only to confuse the issues.