## 32941. HALL *et al v.* KENDALL.

DECIDED APRIL 28, 1950. REHEARING DENIED MAY 19, 1950.

*Casey Thigpen, J. D. Godfrey,* for plaintiffs.

*E. W. Jordan, Irwin L. Evans,* for defendant.

SUTTON, C. J. This claim for compensation against Harry Kendall was filed by the three minor children of Walter Hall, who was killed in November, 1942, while in the employ of said Kendall. The deputy director, before whom the hearing was had, awarded compensation to the claimants; and the full board, one member dissenting, approved the finding and award in favor of the claimants. On appeal, the judge of the superior court reversed the judgment of· the board, and the claimants excepted.

The evidence was as follows:

Lena Belle Hall testified that she is the widow of Walter Hall, and that Mr. Kendall paid her $20 a week after her husband was killed; that they had three children, Effie Lena Hall, age 11, Elinor Hall, age 9, and Walter Hall Jr., age 7, the claimants in this case.

Mrs. A. A. Arrington testified that in November, 1942, she witnessed an accident at the section of the road adjacent to Mr. Arrington's property, that a truck loaded with lumber, traveling in a northeasterly direction, was speeding and started across the road, that it was traveling about 50 miles an hour, was approaching in the opposite direction and was already crossing the road, and barely missed the car in which she and her husband were riding, that it was on the right side of the road, that it was Mr. Harry Kendall's truck and two colored men were in it, that it had already passed their car when it hit the tree

and she did not see it hit the tree, but turned around and saw what had happened, as it was not very far, and that the driver was speeding and running 50 miles an hour when it happened.

H. G. Harrison Jr., testified that he went to the scene of the accident in November, 1942, that the accident occurred at the intersection of two public highways, and that he made pictures at the scene of his own accord. This witness identified the pictures that he had taken at the scene of the accident, and the pictures showed the intersection of the two highways, the tire marks prior to the accident, and the truck, loaded with lumber, where it hit the tree, about 8 or 10 feet from the edge of the road.

Curtis Renfroe testified that in November, 1942, he was employed by Harry Kendall, that he ran the skidder and looked after the wood loading and drove a truck when a driver was out, that the truck involved in the accident was a 1942 Chevrolet and he drove it on Monday prior to the accident, at which time it was in good mechanical condition, that he saw the marks on the road at the scene of the accident and traced the marks to the tree and they measured 20 feet, that in his opinion, from what he saw, the deceased was traveling 60 to 65 miles an hour, that he was going downhill, that in November, 1942, Mr. Kendall's sawmill was about 12 miles from town, near Jordan's Mill Pond, and the place where the accident occurred would not be the proper route from the sawmill to Sandersville, but was about 2 miles off the regular route, that the deceased was employed as a truck driver to haul lumber on the day of the accident, and Mr. Kendall told the deceased not to leave until he returned from the woods, as he wanted to ride to town with him, but the deceased did not wait for him, that Mr. Kendall gave the deceased specific directions how to go into town and the deceased did not follow the route laid out by Mr. Kendall, and that the truck was loaded with about 4000 feet of green lumber when it ran into the tree.

Pearlie Lee Fowler testified that she saw the truck about a quarter of a mile before it reached the crossroads, that it was running at a fast rate of speed, that she did not witness the accident, but saw it after it occurred, that it was Mr. Kendall's truck and she did not know who was driving.

J. W. Miller testified that he worked for Mr. Harry Kendall and was working for him in November, 1942, that the deceased had worked for him, that he knew where the accident took place, that the deceased was hauling lumber on the day of the accident, was off his regular route at the time of the accident, and that Mr. Kendall had told the deceased to wait for him.

Harry Kendall, the employer, testified that he was the operator of the Kendall Lumber Company and was operating it on November 11, 1942, that on some days he worked 8 or 9 employees and on other days 10, 12, or 13 employees, that Walter Hall, the deceased, was employed by him as a truck driver for hauling lumber, that he had cautioned him about driving so fast, and had told him if he did not slow down he would have to get another driver, that he had complaints from the other employees about the deceased's fast driving, that he told the deceased he wanted to go back to town with him when he loaded the truck, and also told J. W. Miller to tell the deceased to wait for him, but the deceased did not wait for him, that the deceased took a route miles out of the way, which was not the route specified to haul lumber on, that lumber was never hauled except on the main road and the route the deceased took was at least 5 miles out of the way, that the accident occurred approximately 2 miles from Sandersville, that he paid the deceased 35¢ an hour for his work, that he had paid the funeral bill, which amounted to $300, and that the combined weight of the truck and the 4000 feet of lumber was 29,000 pounds.

■ The uncontradicted evidence shows that Walter Hall, now deceased, was driving a truck loaded with 4000 feet of green lumber at an excessive and unlawful rate of speed of 50 m.p.h., or more, at the intersection of two public highways and that he swerved to the right to avoid hitting the automobile of Mrs. A. A. Arrington at the intersection and ran off the road and struck a tree, thereby wrecking the truck and killing himself; that the truck and the load of lumber thereon weighed approximately 29,000 pounds.

Code (Ann. Supp.) § 68-301 (Ga. L. 1939, pp. 295, 297), provides, in part, that the speed limit of a motor vehicle on a public street or highway of this State, where the combined weight of the vehicle and the load is over 16,000 pounds, shall not ex-

ceed 35 m.p.h. The violation of this statute is a penal offense, a misdemeanor. Code (Ann. Supp.) § 68-9920 (Ga. L. 1939, pp. 295, 302). It is provided by Code § 114-105 that "No compensation shall be allowed for an injury or death due to the employee's wilful misconduct, . . or wilful failure or refusal to . . perform a duty required by statute." It has been ruled by the Supreme Court in *Aetna Life Ins. Co.* v. *Carroll*, 169 *Ga.* 333, at pp. 342 et seq. (150 S. E. 208), that the commission of a crime by an employee is wilful misconduct within the meaning of our statute; and that the employer should not be required to pay compensation for the employee's injury, or death, due to his violation of a criminal statute, such violation being the proximate cause of his injury or death. "It would be unreasonable to hold that an employee was not guilty of wilful misconduct in committing a crime which resulted in his death, when he failed or refused to perform a duty required of him by statute, such failure or refusal being made a crime and punishable as such by the statute imposing the duty. The master should not be compelled to compensate the employee for his injury, or his dependents for his death, caused by his violation of a criminal statute." *Aetna Life Ins. Co.* v. *Carroll,* supra, at p. 344. This question is dealt with at length at pp. 342-348 of the *Carroll* case, and the principle there ruled is as stated above. That case is applicable and controlling in the present case, where the uncontradicted evidence shows that Walter Hall's death was the result of his own wilful misconduct in the operation of the truck as above stated.

It is true that a finding of fact by the State Board of Workmen's Compensation is controlling on the superior court and the appellate court, in the absence of fraud, where the finding is supported by any competent evidence; but where the award of the board is based upon an erroneous conclusion drawn from the facts and the law applicable thereto, then it is proper for the judge of the superior court to reverse the award and to enter the proper judgment under the law and the facts of the case. *Glens Falls Indemnity Co.* v. *Clark,* 75 *Ga. App.* 453 (43 S. E. 2d, 752), and citations.

■ Where, as here, the evidence demanded a finding that the deceased was killed as a result of his own wilful misconduct,

the judge of the superior court, on appeal, properly vacated and set aside the award granting compensation.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232, Code (Ann. Supp.) § 24-3501), requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment affirmed. Sutton, C.J., MacIntyre, P.J., Gardner and Worrill, JJ., concur. Felton and Townsend, JJ, dissent.*

FELTON and TOWNSEND, JJ., dissenting. The burden of proving the affirmative defense was on the employer. The only evidence as to the speed of the truck was opinion evidence not based on facts which the triers of fact could evaluate for themselves, except that the skid marks were twenty feet long. Under the record in this case we do not think this court can or should say that as a matter of law the triers of fact erred in not accepting the opinion evidence on the issue involved. It cannot be ascertained from the majority opinion on what theory the decision is based. If it is based on the theory that an appellate court can reverse triers of fact upon their failure to accept pure opinion evidence, we think it is erroneous. *Thompson v. Atlanta,* 66 *Ga. App.* 255 (17 S. E. 2d, 761); *Atlanta & West Point R. Co. v. Hemmings,* 66 *Ga. App.* 881 (19 S. E. 2d, 787); *Musselwhite v. Ricks,* 55 *Ga. App.* 58 (189 S. E. 597); *Mills v. State,* 71 *Ga. App.* 353 (30 S. E. 2d, 824); *Randall v. State,* 73 *Ga. App.* 354 (36 S. E. 2d, 450); *Haverty Furniture Co. v. Calhoun,* 15 *Ga. App.* 620 (84 S. E. 138); *Hays v. State,* 16 *Ga. App.* 20 (84 S. E. 497); *Hubbard v. Rutherford,* 148 *Ga.* 238 (96 S. E. 327); *Lamb v. Sewell,* 20 *Ga. App.* 250 (92 S. E. 1011). If the testimony as to the speed of the truck is regarded as testimony as to a "fact," we think the conclusion is erroneous. The courts of this and other States treat such testimony as opinion evidence. *Fisher Motor Car Co. v. Seymour & Allen,* 9 *Ga. App.* 465 (71 S. E. 764); *Atlanta, Knoxville & Northern Ry. Co. v. Strickland,* 116 *Ga.* 439 (42 S. E. 864); *Rentz v. Collins,* 51 *Ga. App.* 782 (181 S. E. 678); *Passley v. State,* 62 *Ga. App.* 88 (8 S. E. 2d, 131); 5 Am. Jur. p. 860, § 651; 7 Wigmore on Evidence, p. 134, § 1977. We have found no case in Georgia requiring a fact-finding body to accept such opinion evidence as is involved in this case.