In the matter of MOX WILLIAM WEIDT, JR., whose name was also written MAX A. WEIDT, JR., deceased,

*Employee-Respondent,*

vs.

BRANNAN MOTOR COMPANY,

*Employee-Appellant.*

FERN SMITH, Claimant on behalf of herself and three dependent children, widow and children of Paul C. Smith, deceased,

*Employee-Respondent,*

vs.

BRANNAN MOTOR COMPANY,

*Employer-Appellant.*

(Nos. 2598 and 2599; August 25th, 1953; 260 Pac. (2d) 757)

2

For the appellants the causes were submitted upon the brief of Harden & Harden of Casper, Wyoming, and oral argument of Hobart B. Harden, Jr.

For the respondent in case No. 2598 the cause was summitted upon the brief of Mahoney & Wilkerson of Casper, Wyoming, and oral argument of J. F. Mahoney; for the respondent in case No. 2599 the cause was submitted upon the brief and oral argument of C. N. Bloomfield, Jr. of Cheyenne, Wyoming.

4

## OPINION

RINER, Justice:

These proceedings by direct appeal involve two orders of award entered by the District Court of Laramie County, Wyoming, in two cases, the one entitled: In the Matter of Mox William Weidt, Jr., whose name was also written Max A. Weidt, Jr., deceased, Employee-Respondent, vs. Brannan Motor Company, Employer-Appellant, No. 2598; and the other entitled: Fern Smith, Claimant on behalf of herself and three dependent children, widow and children of Paul C. Smith, deceased, Employee-Respondent, vs. Bannan Motor Company, Employer-Appellant, No. 2599. The record shows that these two cases were tried together and by stipulation of the parties through their respective counsel these two cases were also consolidated for purposes of taking an appeal from the orders of award and decree entered therein to this court and it was

agreed that these appeals might "be made upon a single record upon a trial of said causes." Both of the above mentioned cases can be disposed of by an opinion which, while considering the record applicable to each, will, nevertheless, undertake to discuss the legal principles pertinent to each as we view them. We will, therefore, discuss the record as we find it for the disposition of:

## CASE NO. 2598.

When this came on for trial by the court without a jury it appeared that Weidt and Smith on April 29, 1952, were in the employ of the Brannan Motor Company, appellant, usually referred to herein as the "Motor Company" and these men were directed on that day by Mr. E. B. Brannan, the president of the Company, to attend a carburetor school in Cheyenne, Wyoming, that evening. These employees were supplied by Mr. Brannan with a company automobile, with which to make the trip. This car was in excellent mechanical condition and contained ample gasoline to make the trip without stopping to refuel. It carried a Wyoming 1-D-23 license plate and was a light tan colored Studebaker automobile as mentioned above. Weidt and Smith left Casper at about 3:15 p.m. on the day stated above on their trip to Cheyenne. On that day (April 29, 1952) a Mr. George A. Berger testified that he left Casper at about 3 p.m. He was maintaining a speed of 60 to 65 Miles an hour when a cream colored 1951 Studebaker car passed him at an exceptionally fast rate of speed, which Berger estimated to be 70-75 miles per hour. This passing occurred some place between Casper and Wheatland; exactly where the witness did not recall. Berger also said that this same Studebaker passed him a second time between Wheatland and Chugwater, Wyoming, at a high rate of speed. Berger was travelling at all times between 60 and 65 miles

an hour. Berger stopped near Wheatland for a period of between five to ten minutes just outside the city limits of that town in order to talk to a highway patrolman. He then went on toward Cheyenne. The next time Berger saw the Studebaker automobile was on the right side of the highway over against a telephone pole which had the appearance of being smashed. The borrow pit, at that point, showed evidence of this car having left the highway immediately south of a bridge and going down into the pit and up on the other side coming to rest at the telephone pole. The car was facing southeast with the hood and trunk lid up and both car doors were, at that time, open. Weidt's body was lying face down 15 to 20 feet west of the fence which was located about 36 feet from the oiled highway. Mrs. Weidt's body was about 30 feet west from the fence; Smith was about 60 feet north and 40 feet west of the fence according to Berger's estimation. There was no evidence that the car struck the bridge. The telephone pole was broken off about six or seven feet off the ground. At the break the wood was depressed and broken. Berger arrived at the scene of the accident ten or fifteen minutes after 6 p.m. The roads between the place of the accident and Casper were in good condition; the accident happened just a few minutes before Berger came to the scene. The markings on the telephone pole were fresh; fresh depressions. Berger was told by a man who arrived about the same time that he (Berger) did, that he thought he saw the car go end over end and that that man was in a better position to see what happened than Berger. All this testimony was received without opposition.

Highway Patrolman, Ray Karpinski, in charge of Platte County area including Chugwater, Wheatland, Glendo, Sunrise, Hartville and Guernsey, saw a cream colored Studebaker automobile coming from the north

at a high rate of speed. Karpinski turned his own car around and chased the car toward Chugwater southward. He was unable to apprehend the car although he chased it probably ten or twelve miles. He was travelling at that time 80 to 82 miles an hour; about as fast as the patrol car would go; at that speed Weidt was pulling away from the patrol car and that he, Karpinski, gave up the chase as the Studebaker car was no longer in sight. The sun was still shining and the weather was clear. Karkinski saw this car first about six miles south of Wheatland.

Mr. Hedges, Deputy Sheriff for Platte County, saw the Studebaker car. He stated that there were three people in the front seat and that a women sat between two men one of whom was driving the car; the car going into Chugwater was moving a little faster than normal. Hedges saw the car as it passed through Chugwater. He noticed after the accident that the car was "plumped up" on the outside of the road against the telephone pole.

Mr. Robert Albright, a highway patrolman for Laramie County for 2½ years, then testified that he has investigated possibly over one hundred accidents. He was called out from his home ten minutes to seven in the evening and arrived at the scene of the accident about 7:20 p.m.; it was dark when he arrived there; he noticed that the Studebaker car had hit a telephone pole at about 6 to 8 feet above ground; broken it off and that this was a fresh break. Max Weidt's body, by actual measurement, was 28 feet from the right rear corner of the car. Mrs. Weidt's body was 43 feet by actual measurement from the right rear corner of the car. Smith was 21 feet from the fence. The witness noticed skid marks on the bridge first. These skid marks led down into the right hand borrow pit. It was 285 feet by actual measurement from the bridge to where the

car stopped against the telephone pole; the distance from the edge of the bridge to where the car left the highway was 20 feet. Consequently the car travelled 265 feet after it left the oiled surface of the highway. The witness stated he picked up several broken bottles around the car which were Seven-Up bottles smelling strongly of liquor. He also found a pint bottle of whisky about half full in the glove compartment of the car. Albright helped load two bodies but did not detect the odor of liquor about them. However, the smell of liquor was prevalent in the car itself; the bridge is the South Bear Creek bridge; coming from the north you go around a fairly sharp curve before crossing the bridge. This curve was marked by a warning curve sign installed by the Highway Department of the State of Wyoming and bore figures thereon indicating that the curve should be driven at 45 miles an hour; the road and the bridge at that place were in good condition; from his experience as a patrolman and from the facts appearing as he saw them the car at the time it left the highway was, in his opinion, travelling from 80 to 90 miles an hour.

Counsel for the defendant offered to prove that:

"Paul Smith, prior to the time he departed Casper, knew that Max Weidt was a speed demon and that he was a reckless driver and he discussed it with his wife whether or not he should go or should not go. He subsequently decided rather than discuss the situation with Mr. Brannan he would go and did go."

This offer of proof was, upon objection, denied by the court. Mr. Albright on recall testified that Weidt's body was 28 feet west inside the fence. Her's, (Mrs. Weidt's), was 43 feet from the rear of the car and west of the fence. All of the above evidence and testimony reviewed was uncontradicated.

In the order of award the court finds that Weidt was:

"Killed on the 29th day of April, 1952, at a point approximately 38 miles north of Cheyenne, Wyoming, while in the employ of Brannan Motor Company, Casper, Wyoming, that claim has been made for compensation on account of such injury; that such injury was sustained while employee was working in a covered occupation under the Workmen's Compensation Law, and was not caused by the culpable negligence of the said employee; and that decedent was killed by reason of the overturning of the motor vehicle which he was driving, death being due to a crushed chest.

"THAT there were dependent upon said employee at the time of the accident, the following children:

"Donna May Weidt, born November 12, 1936, a daughter, Ima Jean Weidt, born December 28, 1938, a daughter,

"that the said above two children are residing with their grandfather, M. W. Weidt, Sr., Kaycee Route, Midwest, Wyoming, who was the duly appointed guardian of the person and estates of the said minor children by order entered October 22, 1952, in Probate Case No. 5908 in the records of the District Court of Natrona County, Wyoming, and a third child Albert M. Weidt, born March 16, 1945, a son, * * * "

The Order of Award itself determined that:

"the said minor children be and they are hereby awarded compensation for the death of their said father in the amount prescribed by law, and that Horstman-Gay Mortuary, Casper, Wyoming, be and it is hereby awarded Compensation in the sum of $350.00; that said award of compensation be paid from the State Industrial Accident Fund to the persons entitled thereto;

"To all of which the employer, Brannan Motor Company, Casper, Wyoming, excepts and the exception is allowed."

Turning to the constitutional and statutory law of this State which must be considered in disposing of

this case we note that § 72-102 W.C.S. 1945 (Article 10, § 4, Wyoming Constitution) provides so far as is now material:

"Compensation herein provided for shall be payable to persons injured in extra-hazardous employments, as herein defined, or the dependent families of such, as die, as the result of such injuries, *except in case of injuries due solely to the culpable negligence of the injured employee.*" (Italics supplied.)

Section 60-501 W.C.S. 1945 after stating certain speed limitations which shall prevail in certain localities enacts that: "4. Sixty miles (60) per hour under other conditions." That section 60-501 in its sub-division (d) also prescribes that:

"(d) Whenever the Superintendent shall determine upon the basis of an engineering and traffic investigation that any prima facie speed hereinbefore set forth is greater than is reasonable or safe under conditions found to exist at any intersection or other place or upon any part of a highway, said Superintendent shall determine and declare a reasonable and safe prima facie speed limit thereat which shall be effective when appropriate signs giving notice thereof or erected at such intersection or other place or part of the highway."

Section 60-701 fixing the penalties for violation of Statute 60-501 reads:

"(a) It is a misdemeanor for any person to violate any of the provisions of this Act (§§ 60-301—60-710) unless such violation is by this Act or other law of this State declared to be a felony.

"(b) Every person convicted of a misdemeanor for a violation of any of the provisions of this Act for which another penalty is not provided shall upon conviction thereof be punished by a fine of not more than One Hundred ($100.00) Dollars, or by imprisonment for not more than 10 days; for a second or subsequent conviction within 1 year thereafter such person shall be punished by a fine of not more than One Hundred

($100.00) Dollars, and imprisonment for not more than 20 days."

The meaning ascribed to the words "culpable negligence" as they appear in the Workmen's Compensation Law was very thoroughly and carefully considered by this court in Hamilton vs. Swigart Coal Mine, 59 Wyo. 485, 493, 494; 143 P (2d) 203. There this court said:

"The constitutional amendment of 1914 (Wyo. Const. Art. 10, § 4,) which made provision for the enactment of the Workmen's Compensation Law, directed that compensation be paid to each person injured in extrahazardous employment, or to the dependent families of those who die as the result of such injuries, 'except in case of injuries due solely to the culpable negligence of the injured employee'. This exception is repeated several times in the statutes (§§ 124-102, 124-112(4), 124-113, 124-120), but there is no legislative definition of 'culpable negligence.' In some cases it has been urged that the word 'culpable' has the mild meaning of 'blamable' (see Hotelling v. Fargo-Western Oil Co., 33 Wyo. 240, 238 P. 542), but that meaning was rejected in Fuhs v. Swenson, 58 Wyo. 293, 131 P (2d) 333, where it was said, among other things, that the words 'culpable negligence,' as used in our law 'may sensibly be held to have a meaning practically the same as the phraseology of the English Act or most American Acts, which employ the English statute as their model, in the use of the terms used in this connection. * * *' 58 Wyo. 307, 131 P (2d) 338.

"The phraseology of other acts to which we referred is 'serious and wilful misconduct', and decisions in other jurisdictions under those acts on the question of the workman's serious and wilful misconduct, may be considered as relevant on the question of a workman's culpable negligence under our law."

Amplifying the last sentence in the above quoted excerpt the decision of the Supreme Court of Connecticut, in Gonier v. Chase Companies, 97 Conn. 46, 115 A. 677, quoted in the Hamilton v. Swigart Coal Mine case supra, (see 59 Wyo. 483, 494, 495) is referred to

and the following language is approved as "satisfactory";

" 'Misconduct is any improper or wrong conduct. And when such misconduct is not trivial, but grave in character, it becomes the serious misconduct of the statute; that is improper conduct of a grave and aggravated character. Whether misconduct is serious is to be determined from its nature, and not from its consequences. (Citing Johnson v. Marshall, Sons & Co. (1906) A.C. 409, 5 Ann. Cas. 630). Misconduct which exposed the deceased to serious injury would be serious misconduct. Not only must the misconduct be of this grave character, but under the statute, it must also be willful. By willful misconduct is meant either intentional misconduct—that is, such as is done purposely, with knowledge—or misconduct of such a character as to evince a reckless disregard of consequences to himself, by him who is guilty of it. (Citing Burns' Case, 218 Mass. 8, 105 N.E. 601, Ann. Cas. 1916A, 787, 5 N.C.C.A. 630, and other cases . . . )' ".

It may be here noted also that the Supreme Court of North Carolina has held in State vs. Cope, 204 N.C. 28, 167 S.E. 456, 458, that:

"An intentional, willful, or wanton violation of a statute or ordinance, designed for the protection of human life or limb, which proximately results in injury or death, is culpable negligence." (Citing a number of authorities.)

The section of Statutes, 60-501, supra, is as we have seen a criminal Statute. The violation thereof is declared to be a misdemeanor with a prescribed penalty as above set forth. Obviously it was designed to safeguard the travelling public on the open highways of this State.

It is urged that as the trial court finds that Weidt was not guilty of "culpable negligence" this court is bound thereby. With that contention we are unable to agree. The expert witness, Highway Patrolman Al-

bright, stated as we have seen, that he had in time past, in the execution of his duties as a patrolman, investigated possibly 100 accidents; and that from his experience and the facts as he saw them shortly after the accident it was his opinion that the Studebaker car was travelling 80 to 90 miles an hour when it left the highway. It can hardly be reasonably doubted that this opinion was not very erroneous when it is recalled that the Studebaker car travelled out of control a distance of 265 feet off the oiled highway down into, and out of the borrow pit, coming finally to rest against the telephone pole which it broke off some 6 to 8 feet above ground; the speed of the vehicle throwing the doors of the car open, unlatching the hood and the trunk compartment and disgorging the seat cushions and throwing the three people who were riding in the front seat the following distances: Weidt 28 feet from the right rear corner of the car as it rested next to the telephone pole; Mrs. Weidt 43 feet from that corner of the car and Smith 21 feet from the car corner which would have been against the fence if it had not at that time been down for repairs. The fence thus referred to was itself some 36 feet from the oiled surface of the highway at the place where the bodies of the Weidts and Smith were found shortly after the accident. These people were thrown the above distances out of the car with such force that Mr. and Mrs. Weidt were evidently killed almost instantaneously and Smith was so severely injured that he died some four hours later in the Cheyenne hospital where he had been taken by ambulance.

In Kastel v. Stieber 215 Cal. 37, 8 P. (2d) 474, the Supreme Court of California held that, where an automobile passed over a street curb and then struck and broke a trolley pole 18" thick was strongly corroborative that the automobile which did this damage was

travelling at an excessive rate of speed. It is common knowledge that the telephone poles in this state are approximately that same thickness or very little less.

In Aetna Life Ins. Co. v. Carroll 169 Ga. 333, 150 S.E. 208, 213, Section 14 of the Georgia Workmen's Compensation Act provided that "no compensation shall be allowed for any injury or death due to the employee's willful misconduct, * * * or willful failure or refusal to * * * perform a duty required by statute." In that case the driver of an automobile approaching a railroad crossing at an excessive rate of speed collided with a freight train and was killed. Denying compensation to his widow the court used this language:

" 'An employee who, in the course of his employment was killed as the result of the overturning of an automobile being driven by him along a public highway at a rate of speed prohibited and made punishable as a criminal offense by the Motor Vehicle Act (Stats. 1913, p. 649), was guilty of willful misconduct precluding an award of compensation, within the meaning of the Workmen's Compensation Act of 1913, notwithstanding a finding of the Industrial Accident Commission that the employee, in driving at such rate of speed, was not acting in violation of any rule made by his employer, and that such speed was not unusual according to the usage of the vicinity, and was not so in excess of customary rates of speed as to amount to speed mania, and did not amount to more than ordinary negligence.' "

In Fidelity, etc. Co. v. Ind. Acc. Comm., 171 Cal. 728, 154 Pac. 834, 835, it was decided that:

"The plain and unescapable fact is that 'the employee' was criminally violating a law designed for his own protection and for that of the general public."

In consequence of this fact compensation was denied.

So in Fortin v. Beaver Coal Co., 217 Mich. 508, 187 N.W. 352, it was held that a miner who attempted to

jump across the bottom of a shaft, instead of passing around the traveling way, which act by statute was made a misdemeanor, is guilty of intentional and willful misconduct within the meaning of the Workmen's Compensation Act, and no recovery can be had for his death by the fall of coal down the shaft striking him as he was jumping, and the court declared that: (p. 353 of 187 N.W.)

" 'It would be anomalous, to say the least, to permit one statute to be invoked and award compensation thereunder for a death occasioned in violating another statute prohibiting the act and making it a misdemeanor.' "

See also Hall v. Kendall, 81 Ga. App. 592, 59 S.E. (2d) 421. In that case it appeared that uncontradicted evidence disclosed that the deceased employee was driving a truckload of lumber at an excessive rate of speed in violation of a penal statute and that he ran off the road and struck a tree while driving in order to avoid a collision with another automobile. It was held that this was "willful misconduct" for which no compensation was allowable.

While it is true that a finding of fact by the trial court is ordinarily controlling here where the finding is duly supported by competent testimony, it is not true where the award of the district court is based upon either an erroneous conclusion drawn from the facts and the law applicable, or upon an absence of factual support and in the face of uncontradicted testimony and evidence supported by the physical facts surrounding the accident. It is then proper for this court to reverse the award and return the case to the trial court with instructions to enter a proper order or judgment.

In the case at bar it appears to us that the trial court overlooked the situation which we have above reviewed. As we see it the driver of the Studebaker car, Mr.

Weidt, deliberately violated repeatedly a criminal statute which was designed, as before stated, for the general safety of the travelling public as well as his own. As a consequence three people, including himself, had their lives violently ended. There is nothing in the record before us which has been called to our attention extenuating or excusing the conduct of the deceased driver of the Studebaker car. We cannot see our way clear to affirm an award of compensation under such circumstances. Accordingly, the order of award in Case No. 2598 is reversed and remanded to the District Court of Laramie County with instructions to dismiss the claim upon which the award was made.

## CASE NO. 2599

The evidence on which this case was tried is reviewed at length in the discussion of the proofs and circumstances appearing in the record relative to Case No. 2598, supra.

It shows that Smith had nothing whatsoever to do with the driving of the Studebaker car. All he did was to ride as an employee in a car furnished by his employer, the Brannan Motor Company, at the direction of the Company's president. We may assume that Smith knew that Weidt had a reputation for being a fast and reckless driver but we find no authority cited which establishes or tends to establish that merely riding in a car with a driver who has a reputation for fast or reckless driving is "culpable negligence" as defined in the case of Hamilton vs. Swigart Coal Mine, supra. As we have seen the proof is that the employer Motor Company, through its president, furnished the transportation and undoubtedly know that Weidt would do the driving. In Littlefield's Case 126 Me. 159, 136 A. 724, it was said that:

"It is now generally held that where transportation is furnished by an employer as an incident of employment, and injury suffered by the employee while going or coming in the vehicle furnished by the employer and under his control arises out of and is within the course of the employment." (Citing many cases.)

It is urged that Smith, when he found that Weidt was driving the car improperly, should have left the car, but it is not disclosed by the record that he had an opportunity to do so, the car making no stops between Casper and the place of the accident. It is also insisted that he could have stopped the car by turning the ignition key. However, it is disclosed that Smith was riding next to the car door on the side away from the driver and it is far from clear that his position in the automobile was such that he could have reached the ignition key or that he could have turned it properly to break the contact switch even if he could have reached it. For all that appears Smith may have been assured that Weidt would drive the car properly after the improper driving of the latter between Casper and Chugwater but that Weidt did not keep to that assurance. It must be assumed that Smith took every means and did everything he could for his own safety. (See Cukr vs. Wilhelm, 68 Wyo. 1, 227 P (2d) 988).

It does not necessarily follow that the car with Wiedt at the wheel was a dangerous instrumentality. It evidently was not for some 155 miles of driving from Casper. We cannot perceive how Smith could have foreseen that Weidt would disregard the 45 mile Highway Department speed regulation relative to the curve where the accident happened. For aught that appears here he may have properly obeyed all the other signs on the highway, but with the record before us, we cannot see that the defendant has shown that Smith was guilty of "culpable negligence," and that his conduct was such as to deprive him or his dependants of com-

pensation. It follows that the award in this case, No. 2599, should be, as we think, affirmed.

As above indicated the award in case No. 2598 is reversed and remanded to the District Court with instructions to dismiss the claim upon which it was made. The award in case No. 2599 should be affirmed. BLUME, C. J., and HARNSBERGER, J. concur.