41509. WATERS v. NATIONAL BISCUIT COMPANY.

Argued September 14, 1965—Decided February 23, 1966.

*J. Richmond Garland, M. T. Hartman, III,* for plaintiff in error.

*Woodruff, Savell, Lane & Williams, John M. Williams, Lawson Cox,* contra.

BELL, Presiding Judge. ■ In a portion of the award, the board stated, "The original injury in this case was a fracture of the distal end of the left radius; therefore it was from the beginning, and remains, a specific member injury." The stated conclusion, if it means what it apparently does, that there can be no award under *Code Ann.* § 114-404 or § 114-405 for general incapacity as a change in condition after an award under *Code Ann.* § 114-406 for industrial handicap, is a misconception of the law. "As we comprehend *Code Ann.* § 114-709, compensation may be awarded for disability resulting from an injury to a specific member of the body as a change in condition from a related general disability stemming from an accident. We think there may be a change in condition from a specific to a general disability or vice versa, provided, of course, that the claimant's total compensation does not exceed the limit prescribed by *Code Ann.* § 114-404." *General Motors Corp. v. Bowman,* 107 Ga. App. 335, 339 (130 SE2d 163) ; *Automatic Sprinkler Corp. v. Rucker,* 87 Ga. App. 375, 381 (73 SE2d 609) ; *U. S. Cas. Co. v. Truett,* 108 Ga. App. 322, 323 (132 SE2d 789). Thus if there was any causal relationship between claimant's original specific disability and the general disability shown at the hearing of February, 1963, she was entitled to compensation for total incapacity under *Code Ann.* § 114-404 irrespective of the fact that the result of her injury at first amounted merely to a specific disability.

■ Dr. William A. Wood testified that in January, 1961, "On examination she did have rather marked spasm of the right trapezius muscles which extend across the right shoulder. She did have full range of motion in her neck and it was my impression that this condition was mostly aggravated or brought about by her previous injury to her arm which she had worn in a cast for several months."

In an examination in April, 1961, Dr. Charles M. Taylor "found that she had muscle spasm in the neck, back and shoul-

der area." He testified, "That could be due to a nerve involvement resulting from pressure on the nerves in the brachial prexus . . . It could be the result of the injury, the injury to the wrist itself . . . The fall that she had is possibly the main cause of the muscle spasm, and also the wearing of the cast, by creating a unilateral muscular pull."

In February, 1963, Dr. James McCall found that "There was swelling in the right hand and wrist and also in the medial portion of the elbow . . . On our foramen compression test there was a positive finding there causing a sharp pain down the right arm and into the right shoulder, even going on out into the hand."

Dr. Darius Flinchum's testimony indicated the condition of claimant's right arm and hand was a reactive state associated with the condition of claimant's shoulder, which other medical testimony showed could have been caused by the original injury.

Moreover, there was evidence that claimant had developed mental disorder in connection with her physical incapacities.

One psychiatrist's opinion was, "The central problem seems to resolve around the disability of her left wrist . . . Her injury, incapacitation, and in particular, rejection by employers she felt owed her more, produced the emergency situation in the current depressive reaction."

Another psychiatrist testified, "I think that her emotional disorder is so pronounced that she would not be able to function normally, or to make an employee worthy of her hire, so to speak . . . The symptoms started after the first accident, and after she had been returned to duty . . . Holding up on the ladder with one hand, with the hand having been broken, and the continuous state of insecurity she felt herself to be in, by reason of her weakness and pain that she was encountering when holding herself on this ladder, resulted in the gradual development, and the gradual increase in the manifestations of her disorder."

"The human body consists of bones, flesh, ligaments, and nerves, controlled by the brain. The law does not state which of these particular elements must produce the disability. If a disability exists, whether or not it is psychic or mental, if it is

real and is brought on by the accident and injury, this being a humane law and liberally construed, it is nevertheless compensable." *Indemnity Ins. Co. v. Loftis,* 103 Ga. App. 749, 751 (120 SE2d 655); *Liberty Mutual Ins. Co. v. Archer,* 108 Ga. App. 563, 564 (134 SE2d 204).

The evidence discussed above showed a causal relationship between claimant's original injury and her other physical complaints present at the hearing in February, 1963, and between the original injury and the emotional disorder found by psychiatrists. This evidence of the *possibility* of connection between the original injury and the disabilities shown at the hearing, would have authorized an award of compensation for the additional disability. See *Aetna Cas. &c. Co. v. Nuckolls,* 69 Ga. App. 649 (26 SE2d 473); *Lockheed Aircraft Corp. v. Marks,* 88 Ga App. 167, 173 (76 SE2d 507); *Continental Cas. Co. v. Bennett,* 69 Ga. App. 683 (26 SE2d 682); *Fireman's Fund Indem. Co. v. Moody,* 100 Ga. App. 690 (112 SE2d 202); *Employers Mut. Liab. Ins. Co. v. Smith,* 102 Ga. App. 326 (116 SE2d 247); *Fireman's Fund Ins. Co. v. New,* 110 Ga. App. 596 (139 SE2d 343).

■ There was some evidence tending to show that claimant's disability was due in part to another accident occurring in February, 1962. Of course, it was not necessary that the original injury in March, 1960, be the *sole* cause of claimant's additional disability. See *Zurich Ins. Co. v. Zerfass,* 106 Ga. App. 714, 718 (128 SE2d 75).

From the board's statement in its award that "There is nothing in the evidence to show that the disability now contended by claimant is in any way related to the original accident or to the injury to the left arm," it is obvious that the award is based upon an erroneous legal theory.

"Where it affirmatively appears that the award is based upon an erroneous legal theory, and that for this reason the board has not considered all of the evidence in the light of correct and applicable legal principles, the case should be remanded to the board for further findings. *Barbree v. Shelby Mutual Ins. Co.,* 105 Ga. App. 186 (123 SE2d 905) . . . The award, stating as its basis that there was no such evidence, shows that

it is based on an erroneous legal theory." *Miller v. Travelers Ins. Co.*, 111 Ga. App. 245, 248 (141 SE2d 223). See also: *Wilson v. Swift & Co.*, 68 Ga. App. 701 (23 SE2d 261); *Borden Co. v. Dollar*, 96 Ga. App. 489, 490 (100 SE2d 607); *Liberty Mut. Ins. Co. v. Simpson*, 101 Ga. App. 480 (1) (114 SE2d 141); *Baker v. Liberty Mut. Ins. Co.*, 103 Ga. App. 100 (2) (118 SE2d 386).

■ The employer contends that the testimony of physicians who had not examined claimant at the time of the previous award but based their testimony only upon examinations corresponding with the time of the hearing upon change of condition, is without probative value. This contention is based upon *Phinese v. Ocean Accident &c. Corp.*, 81 Ga. App. 394, 395 (58 SE2d 921). Accord, *Fletcher v. Aetna Cas. &c. Co.*, 95 Ga. App. 23, 24 (96 SE2d 650); *Travelers Ins. Co. v. Boyer*, 102 Ga. App. 248, 250 (116 SE2d 6).

*Phinese* simply means that knowledge of a claimant's condition at the time of a hearing upon change of condition together with and in relation to the previous award itself, without other knowledge of what the claimant's condition was at the time of the previous award, is not sufficient as a basis to determine whether a change has taken place. However, this does not mean that the physician's testimony based upon examination at the time of the subsequent hearing is insufficient to prove the subsequent condition independently of other evidence. It is proof of the claimant's condition at the time of the subsequent hearing even though by itself it does not denote a change. And where the previous condition is shown by other competent evidence proving a different condition, the board is authorized to find that a change has taken place. The rule in *Phinese* was not intended to cover cases where the Board of Workmen's Compensation has before it evidence furnishing a basis for comparison of claimant's condition before and after the alleged change took place; nor does it cover those situations where it is medically feasible to diagnose a change on the basis of one examination after the change has occurred. *Phinese* is not applicable in this case.

*Judgment reversed with direction that the case be remanded*

*to the board for further action consistent with the opinion of this court. Frankum and Hall, JJ., concur.*