44734. ARGONAUT INSURANCE COMPANY et al. v.
ALMON et al.

Bell, Chief Judge. This is an appeal from an award in favor
of claimants by a single director of the Board of Workmen's
Compensation against the employer and his insurance carrier
which was adopted by the full board and affirmed by the
Superior Court of Troup County.

Claimants are the minor children of Jerry Almon. On Septem-
ber 19, 1967, Almon was killed in a grade crossing collision
with a train while in the employ of the defendant employer.
At the time of the fatal accident, the deceased was driving a
truck, heavily loaded with sand, in an easterly direction.
The train was traveling in a northerly direction. A reg-
ular stop sign was in place near the crossing facing the
deceased's direction of travel. There was no evidence that
the decedent's view of the crossing was obstructed. A State
Trooper who investigated the accident found eighty-six feet
of skid marks, made by the truck, which curved to the left.
According to the testimony of the train crew, Almon did not
stop before entering the crossing. The single director in his
findings of fact stated, among other things, that "There is no
evidence that the deceased was guilty of any wilful mis-
conduct or violation of any State statutes as there was con-
flict in the evidence between the trainmen and the State
Trooper as to whether the deceased applied the brakes to
said truck and there is no evidence as to whether or not there
was mechanical failure to said truck prior to the accident."

Defendants urge that the evidence demands a finding that the
deceased employee's death was caused by his wilful mis-
conduct as his failure to stop at the crossing constituted vio-
lations of Code Ann. §§ 68-1661 (c) and 68-1662, both of
which are misdemeanors, and that accordingly, Code § 114-105
precludes recovery. Defendants rely upon the holding of
the Supreme Court in Aetna Life Ins. Co. v. Carroll, 169 Ga.
333 (150 SE 208) and Hall v. Kendall, 81 Ga. App. 592 (59
SE2d 421). In Hall, the court merely held that the uncon-
tradicted evidence demanded the finding of fact that the
claimant's conduct was wilful and a flagrant and intentional
violation of a traffic statute. The Aetna case also involved
the question as to the manner in which a statute pertaining
to speed when approaching a railroad crossing had been vio-

lated. *Aetna* plainly held that the statutory bar requires conduct of a criminal or quasi-criminal nature; and that negligent conduct, even though grossly so, does not equate with the former. The reversal in *Aetna* was based solely on the Supreme Court's honoring the fact-finding board's determination that the claimant in that case was also guilty of wilful misconduct. Here, under evidence authorizing it to do so, the board found the conduct to be negligent only; and found it not to be criminal or quasi-criminal. It necessarily follows then, that we too must honor the board's finding as *Aetna* and hosts of other precedents demand affirmance of this award. See, inter alia, *Reid v. Raper,* 86 Ga. App. 277 (71 SE2d 735); *Beck v. Brower,* 101 Ga. App. 227, 228 (113 SE2d 220).

*Judgment affirmed. Jordan, P. J., Hall, P. J., Deen, Quillian, Whitman and Evans, JJ., concur. Eberhardt and Pannell, dissent.*

ARGUED SEPTEMBER 3, 1969—DECIDED SEPTEMBER 25, 1969—REHEARING DENIED DECEMBER 19, 1969—

*Greene, Buckley, DeRieux, Moore & Jones, Thomas B. Branch, III,* for appellants.

*C. C. Perkins, Howe & Murphy, Harold L. Murphy,* for appellees.

EBERHARDT, Judge, dissenting. A careful reading of the evidence upon which the board made its award reveals that the record fails to support its conclusion that "There is no evidence that the deceased was guilty of any wilful misconduct or violations of any state statutes. . ." On the contrary, and under decisions of both this court and the Supreme Court, a different conclusion is demanded.

The only eyewitnesses to the occurrence were S. G. Jordan, the baggage master on the train, and Cleve Dallis, the fireman. Jordan testified that the train whistle was sounded at the blow post and between the post and the grade crossing in the manner required by law—two long blasts, a short blast and another to wind up the signal as the train came near the crossing. It was a clear day. The railroad was visible to one approaching the

grade crossing for a distance of from 1,500 to 2,000 feet back down the track. He first saw the truck which Almon was driving when it was about 250 feet from the tracks, but paid it little attention until it got closer. There were warning signs on the highway and a stop sign at the crossing. The truck, loaded with sand, was traveling about 35 miles per hour and appeared to come on toward the crossing without any significant check of speed. The driver "never turned his head . . . he never stopped." He came on to the crossing and struck the front of the engine with the front of the truck, derailing the train.

Dallis first saw the truck when it was 75 to 80 feet from the crossing. The driver did not seem to be slowing down much. He never stopped—he was moving all the time until he struck the train, derailing it. Dallis called out to the engineer, who was on the other side of the engine, when he saw that the truck was not going to stop and the train was immediately thrown into emergency.

Sgt. Fritz R. Calton, a member of the State Highway Patrol, came to the scene after the occurrence but before Almon was carried away in an ambulance. He was alive, but unable to be interviewed. He died soon afterward at the hospital. When Sgt. Calton came upon the scene the train was derailed, blocking the crossing, and the truck, broken into three or four pieces, was burning. Almon was lying out on the ground away from the truck.

He found tire marks running back from the truck some 86 feet on the pavement. The truck had been traveling east toward the crossing and the train was headed north. The tire marks turned or curved off to the north, or the driver's left, from a point about 20 feet from the rail.

Code Ann. § 68-1661 (Ga. L. 1953, Nov. Sess. p. 556 et seq.) provides: "Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within 50 feet but not less than 15 feet from the nearest rail of such railroad, and shall not proceed until he can do so safely, when: . . . (c) An approaching train is plainly visible and is in hazardous proximity to such crossing."

Code Ann. § 68-9926 (Ga. L. 1953, Nov. Sess. p. 556 et seq.),

provides: *"Required obedience to traffic laws; penalty for violations.* It is unlawful and, unless otherwise declared in this law [Chapters 68-15 through 68-17; §§ 68-9926, 68-9927] with respect to particular offenses, it is a misdemeanor for any person to do any act forbidden or fail to perform any act required in this law."

Thus, failure to stop the vehicle "within 50 feet but not less than 15 feet from the nearest rail" under the circumstances depicted by the uncontradicted evidence here was a penal offense, and the finding of the board that there was no evidence of any wilful misconduct or of violation of any State statutes is wholly without evidence to support it.

While it is a general rule that we are bound by factual findings of the board, we are not bound by findings which are bottomed upon an erroneous legal theory (*Miller v. Travelers Ins. Co.,* 111 Ga. App. 245, 248 (141 SE2d 223); *Waters v. Nat. Biscuit Co.,* 113 Ga. App. 170, 174 (147 SE2d 676); *General Motors Corp. v. Hargis,* 114 Ga. App. 143, 144 (150 SE2d 303); *Mallory v. American Cas. Co.,* 114 Ga. App. 641, 644 (152 SE2d 592)), nor does this rule "mean that a fact-finding body may absolutely disregard uncontradicted, unimpeached testimony and base a finding contrary to it." *American Mut. Liab. Ins. Co. v. Gunter,* 74 Ga. App. 500, 515 (40 SE2d 394).

I cannot find a rational basis for distinguishing *Aetna Life Ins. Co. v. Carroll,* 169 Ga. 333, 343 (150 SE 208)[1] from the situation here, for in that case the Supreme Court held: "The conscious and intentional violation of a penal statute, which constitutes wilful misconduct of the employee, is the conscious or intentional doing of an act which violates the statute, *though he be not thinking of breaking it.* Sloss-Sheffield S. &

---

[1]Where the driver of an automobile ran into a train at a grade crossing, in violation of § 2 of Ga. L. 1921, p. 255 (which § 12 declared to be a misdemeanor), providing: "Upon approaching any intersecting . . . railroad crossing . . . or in traversing such . . . railroad crossing . . . the operator of a motor vehicle or motorcycle, shall at all times have said vehicle under immediate control, and shall not operate said vehicle at a greater speed than 10 miles per hour."

I. Co. v. Greer, 216 Ala. 267 (113 S 271). *The test of misconduct in the case at bar is not the doing of an act for the purpose of and with a specific intent of violating the statute,* but the wilful and conscious doing of the act which is in violation of the statute. To require of the employer to show that the employee thought of the statute and deliberated as to its breach would take away the defense of this wilful violation, and would unduly limit the scope or definition of wilful misconduct. Stockdale v. Ind. Com., 76 Colo. 494 (232 P 669); Sloss-Sheffield S. & I. Co. v. Greer, supra. We have shown above that wilful misconduct involves conduct of a quasi-criminal nature. This being so, then *criminal conduct is wilful misconduct. If conduct ever becomes misconduct, and if misconduct ever becomes wilful misconduct, it is when an employee intentionally commits a crime* which results in his injury or death. *So we are of the opinion that the commission of a crime is wilful misconduct within the meaning of our statute;* and that the employer should not be required to make compensation for his injury, or death, due to his violation of a criminal statute, such violation being the proximate cause of his injury or death. While generally the mere violation of a statute is negligence, *if such statute is a penal statute, and its violation is a crime, the transaction loses its character of negligence, and becomes wilful misconduct within the meaning of our compensation act.* . . It has been well held 'that a workman who violates a reasonable rule made for his own protection from serious bodily injury or death is guilty of misconduct.' . . The case is much stronger where the violation consists of a violation of a criminal statute." (Emphasis supplied).

Concluding, after a lengthy discussion of the matter, the Supreme Court asserted (p. 348): "[A]fter careful consideration of the matter we think that an employee who commits a crime, and is thereby injured or killed, its commission being the proximate cause of his injury or death, is guilty of wilful misconduct; and that *where an employee fails or refuses to perform a duty required by statute, such failure or refusal constitutes a crime, he is guilty of wilful failure or refusal;*

and that because of such wilful misconduct, or of such wilful failure or refusal, compensation for his injury or death should be denied." (Emphasis supplied).

As I read this case, the holding of the court is that when the employee does or fails to do an act which the law makes penal he is, as a matter of law, guilty of wilful misconduct, which, under *Code* § 114-105, relieves the employer of liability.

The evidence in the case sub judice demands a finding that Almon failed to stop within 50 feet and not less than 15 feet of the nearest rail—a failure which the law makes penal.

Whether we like the reasoning or the result of this case is immaterial. We are bound by it, and we must follow it. We have done so in *Pacific Indem. Ins. Co. v. Eberhardt*, 107 Ga. App. 391 (130 SE2d 136) where an employee crossed the street outside any crosswalk in violation of *Code Ann.* § 68-1657 (a) and was fatally injured when an automobile struck him. See also *American Mut. Liab. Ins. Co. v. Adams*, 32 Ga. App. 759 (124 SE 801); *Gooseby v. Pinson Tire Co.*, 65 Ga. App. 837 (16 SE2d 767); *Klein v. Maryland Cas. Co.*, 79 Ga. App. 560 (54 SE2d 277); *Hall v. Kendall*, 81 Ga. App. 592 (59 SE2d 421).

"While the majority of jurisdictions hold that the simple violation of criminal statutes, such as speed or stop laws, does not amount to wilful misconduct (1 Larson 500, § 35.30), it is the law of Georgia that the violation of a penal statute is 'wilful misconduct within the meaning of our compensation act.' *Aetna Life Ins. Co. v. Carroll*, 169 Ga. 333 (150 SE 208); *Hall v. Kendall*, 81 Ga. App. 592 (59 SE2d 421); *Pacific Indemnity Co. v. Eberhardt*, 107 Ga. App. 391 (130 SE2d 136)." *Smith v. Liberty Mut. Ins. Co.*, 111 Ga. App. 616, 619 (142 SE2d 459).

A suggestion in the single director's findings, adopted by the full board, of a conflict in the evidence as to whether the driver of the truck applied the brakes, and as to whether there may have been a mechanical failure of the brakes is wholly unsupported in the record. Not one witness testified that the brakes were not applied. True enough, the trainmen testified that the reduction of speed was not significant, but

this was not testimony that the brakes were not applied. The patrolman's testimony that there were tire marks for some 86 feet certainly indicated an application of the brakes. It was uncontradicted. The truck knocked the one hundred twenty ton engine off the tracks, which is uncontradicted, and this supports the testimony of the trainmen.

The director, in his findings, asserts that "there is *no evidence* as to whether there was a mechanical failure to the truck prior to the accident."

I find no conflict in the evidence. It demanded a finding that the driver failed to heed the mandate of the law requiring that the truck be stopped within 50 feet of and not less than 15 feet from the nearest track, and that this was the proximate cause of his injury and death.

"The award of the director [as adopted by the full board] was without any competent evidence to support it," and must be reversed. *American Mut. Liab. Ins. Co. v. Gunter*, 74 Ga. App. 500, supra. This is particularly true in the light of the holding in *Aetna*.

I am authorized to state that Judge Pannell joins in this dissent.