67318. GENERAL MOTORS CORPORATION v. SUMMEROUS.

POPE, Judge.

On August 28, 1978 appellee sustained an on-the-job injury when

a spot welding gun swung and hit him in the head, rendering him unconscious and requiring hospitalization. Workers' compensation benefits were first paid by appellant-employer on September 6, 1978. Payment of weekly benefits was thereafter suspended several times, due to appellee's return to work, with subsequent recommencement as he missed time due to the injury. Upon appellee's return to work on September 15, 1980, weekly benefits were finally suspended.

Appellee requested a hearing to determine entitlement to permanent partial disability benefits pursuant to OCGA § 34-9-263. The Administrative Law Judge awarded benefits to appellee under OCGA § 34-9-263 (c) (14) (former Code Ann. § 114-406 (c) (14)) upon a finding of 20% permanent partial disability to the body as a whole due to paranoid schizophrenia caused by appellee's August 28, 1978 injury. The ALJ's award was adopted by a majority of the full Board. The superior court affirmed. Appellant's application for discretionary review was granted.

1. The record contains sufficient competent evidence to support the ALJ's finding that appellee's paranoid schizophrenic condition was caused by the August 28, 1978 blow to his head. There is also no doubt that such psychiatric condition resulting from his physical injury is compensable. See *West Point Pepperell v. Baggett*, 139 Ga. App. 813 (2) (229 SE2d 666) (1976). Cf. *ITT Continental Baking Co. v. Comes*, 165 Ga. App. 598 (1) (302 SE2d 137) (1983). "Georgia has always recognized as compensable those mental results which result from some initial *physical* injury." *Sawyer v. Pacific Indemnity Co.*, 141 Ga. App. 298, 301 (233 SE2d 227) (1977). See *Liberty Mut. Ins. Co. v. Archer*, 108 Ga. App. 563 (134 SE2d 204) (1963); *Indemnity Ins. Co. of North America v. Loftis*, 103 Ga. App. 749 (120 SE2d 655) (1961). Compare *Hanson Buick, Inc. v. Chatham*, 163 Ga. App. 127 (292 SE2d 428) (1982), which addressed an issue *not* presented in this appeal: Whether mental disability *without* prior physical injury is compensable under the Workers' Compensation Act. Thus, under the applicable law and standards of evidentiary review on appeal, appellee's condition is clearly compensable.

2. Appellant's first challenge to the award is grounded in the provisions of OCGA § 34-9-263 (f) governing disability to the body as a whole. Appellant argues that the superior court erred by "failing to find that the provisions of OCGA § 34-9-263 (f) . . . require either a physical disability or a wage loss in order to authorize an award of compensation." OCGA § 34-9-263 (a) provides: " '[P]ermanent partial disability' means disability partial in character but permanent in quality resulting from loss or loss of use of body members or from the partial loss of use of the employee's body." "In cases of permanent partial disability, the employer shall pay weekly income benefits to the employee according to the schedule included within this Code sec-

tion . . . without regard to whether the employee has suffered economic loss as a result of the injury, except as herein provided." OCGA § 34-9-263 (b) (1). The exception referred to is found in OCGA § 34-9-263 (f): "For the purpose of determining disability to the body as a whole under [OCGA § 34-9-263 (c) (14)], 'disability' means either physical impairment or actual wage loss as provided under Code Section 34-9-262, whichever is greater."

Appellee's psychiatrist, Dr. Villanueva, testified by deposition that he first saw appellee on May 29, 1979 and since June 28, 1979 has treated appellee regularly for psychiatric problems experienced from the 1978 injury to his head. Those problems include delusions, hallucinations, suicidal and homicidal ideation, headaches, nervousness, fear of hurting others, fear of getting hurt, and sexual impotence. Although Dr. Villanueva felt that improvement or even present resolution had occurred in many of the problem areas, he expressed his opinion that many are residual and likely to recur in a stressful situation, including a job involving stress. Such jobs should be avoided by appellee, according to his psychiatrist. Resuming the job as a welder, held by appellee at the time of the accident and for thirteen years prior to that, is out of the question in Dr. Villanueva's opinion.

Appellee testified that upon his return to work at appellant's plant, he resumed his job as a welder. However, due to the severe headaches caused by the noise, he requested and was given a transfer to the paint booth. The noise of the booth in combination with the paint fumes which made him disoriented necessitated Dr. Villanueva's intervention on his behalf to obtain yet another transfer. Appellee was then given the job as "sand gloss" in the paint department. In this job he used a rag to wipe the gloss off of the newly-painted cars.[1]

According to Dr. Villanueva's testimony, although he is physically able to perform such functions as night driving, appellee is afraid to do so. He has further trouble with driving, as he gets lost. Appellee's paranoia extends to situations in which people are behind him or make sudden movements. On the basis of his knowledge of appellee's condition, Dr. Villanueva testified that appellee has a 20 percent residual psychiatric disability to the person as a whole, meaning that about one-fifth of the time he will not be able to conduct his normal activities. The ALJ's award contained the conclusion and finding that appellee is a schizophrenic, paranoid type, and because of this, he has a 20 percent permanent partial disability.

---

[1] At the time appellee requested a hearing in this matter, he was working in the paint department; however, by the time of the hearing, he had been laid off due to his seniority status.

" 'The human body consists of bones, flesh, ligaments, and nerves, controlled by the brain. The law does not state which of these particular elements must produce the disability. If a disability exists, whether or not it is psychic or mental, if it is real and is brought on by the accident and injury, this being a humane law and liberally construed, it is nevertheless compensable.' [Cits.]" *Waters v. Nat. Biscuit Co.*, 113 Ga. App. 170, 173 (147 SE2d 676) (1966). As explained in Division 1, the compensability of appellee's condition is well-settled and indisputable. That being so, three categories of benefits are, theoretically at least, available to appellee under the Workers' Compensation Act. OCGA § 34-9-261 benefits are available where "the disability to work resulting from an injury is total. . . ." At the time the hearing was requested, appellee was performing the job of "sand gloss." Moreover, although it is apparent from Dr. Villanueva's testimony that appellee is restricted by his psychiatric problems in the jobs he can perform, he is able to perform some types of work. Appellee functions, just not as well or as smoothly as he did before his injury.

Benefits are available under OCGA § 34-9-262 for temporary partial disability, "where the disability to work resulting from the injury is partial in character but temporary in quality . . . ." On the basis of the evidence, appellee's condition is not temporary. Dr. Villanueva's rating of 20 percent residual psychiatric impairment is, according to his testimony, what he expects to be the maximum improvement. At the time of the deposition, appellee's current impairment was rated by Dr. Villanueva as 25-30 percent.

The remaining provision, OCGA § 34-9-263, governs benefits for permanent partial disability. It is this section which applies to the factual posture of appellee's case. Of the two requirements, physical impairment or loss of wages, necessary to establish disability under OCGA § 34-9-263 (f), we find the evidence sufficient to support the award for permanent partial disability based upon a 20 percent permanent physical impairment.

3. Appellant's final enumeration of error essentially challenges the superior court's affirmance of the award. Appellant contends that the record contains no evidence of a physical disability or wage loss. " 'A finding of fact by a director or deputy director of the State Board of [Workers'] Compensation, when supported by any evidence, is conclusive and binding upon the court, and the judge of the superior court does not have any authority to set aside an award based on those findings of fact, merely because he disagreed with the conclusions reached therein. (Cits.) . . . Upon appeal from an award of the State Board of [Workers'] Compensation granting compensation, evidence will be construed in a light most favorable to party prevailing before the board. (Cit.) . . . Every presumption in favor of validity of

award of Board of [Workers'] Compensation should be indulged in by reviewing court. (Cit.) . . . Neither Superior Court nor Court of Appeals has any authority to substitute itself as fact finding body in lieu of Board of [Workers'] Compensation. (Cit.)' *Howard Sheppard, Inc. v. McGowan*, 137 Ga. App. 408, 410 (224 SE2d 65) [(1976)]." *Kelley v. West Point Pepperell*, 164 Ga. App. 187 (1) (296 SE2d 191) (1982). On the basis of the evidence set out in Division 2 and the foregoing rules of appellate evidentiary review, we find this enumeration to be without merit.

By footnote, appellant raises a question of the basis of Dr. Villanueva's rating appellee's psychiatric impairment at 20 percent. OCGA § 34-9-1 (5) provides: "In all cases arising under Chapter 9 of Title 34, any percentage of disability or bodily loss ratings shall be based upon 'Guides to the Evaluation of Permanent Impairment' published by the American Medical Association or any other recognized medical books or guides." (Ga. L. 1982, p. 2485, §§ 0.5, 5.5.) The American Medical Association publication cited above presents at page 155 "Criteria for Evaluating Permanent Impairment Due to Psychoses." Class 2 of such criteria describes such conditions as schizophrenia, paranoid types, the condition of appellee. The range of rating the "Impairment of Whole Man" in Class 2 is 20 to 45 percent. Although the effective date of the statute, OCGA § 34-9-1 (5), was November 1, 1982, and Dr. Villanueva's deposition was taken in January 1982, his rating of appellee's impairment, based upon his professional experience, certainly falls within the range of the criterion in Class 2 and is not otherwise invalidated based upon his lack of reliance on the publication. See generally *Davis v. Gen. Motors Corp.*, 166 Ga. App. 401 (304 SE2d 402) (1983).

*Judgment affirmed. Quillian, P. J., and Sognier, J., concur.*

DECIDED MARCH 16, 1984.

*William A. Clineburg, Jr., Benjamin G. Estes, R. Marcus Lodge,* for appellant.
*Alan B. Waln,* for appellee.